**Howard F. BURMASTER, and Marvin W. Burmaster, Plaintiffs,**

v.

**Edward J. BRENNER, Commissioner of Patents, Defendant.**

Civ. A. No. 856–64.

United States District Court
District of Columbia.
March 4, 1965.

Rupert J. Brady, Washington, D. C., James R. McKnight, Chicago, Ill., for plaintiffs.

Clarence W. Moore, Sol., U. S. Patent Office, Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action was brought pursuant to 35 U.S.C. § 145 seeking judgment authorizing the defendant, Commissioner of Patents, to issue a patent to plaintiffs on their application Serial No. 109,378, filed May 11, 1961, entitled "Fuel Vaporizer".

The invention disclosed in the application relates to a fuel saving device which may be attached to the engine of standard model automobiles. It consists mainly of an electrically heated metal coil which vaporizes the fuel as it passes from the carburetor to the engine. The coil, hollow, cylindrical and spiral in shape, is mounted vertically just below the carburetor. A positive electrode, which extends horizontally, is attached on one end to the top of the coil, while a vertically extending negative electrode is attached to the bottom end of the coil. The positive electrode, in turn, is attached by a wire through a switch and fuse to the positive terminal of the automobile's battery, while the negative electrode is connected by a wire to a ground. When the circuit is completed by closing the switch, the electric current from the battery heats the coil, and the gasoline droplets in the fuel mixture are vaporized.

The only claim in the case considered by the Patent Office Board of Appeals was Claim 2. It reads as follows:

"2. In an automobile having a body, a battery and an internal combustion engine having a carburetor for feeding fuel, and a manifold positioned below the carburetor with a top collar and a throat, a vaporizer comprising a hollow spiral vertically extending metal coil, a horizontally extending positive electrode attached on one end to the top end of said coil, a negative electrode having a horizontal portion and an integral vertical leg portion attached to the bottom end of said coil, a metal wire attached to the other end of said positive electrode, said wire leading to a switch and then a fuse block supplied with electricity from the battery of the automobile, a metal wire attached to the horizontal portion of said negative electrode, said wire leading to a ground on the body of the automobile, said electrodes covered by insulation with their horizontal portions resting on the top collar of the manifold, so that said coil extends vertically and is suspended in the throat of the manifold, said coil being substantially the same in diameter throughout its extent and at its top and bottom portions, said coil adapted to be heated by the electricity from the battery of the automobile passing to it through said wires, thereby causing fuel to become a mist for the maximum use of its elements for increased mileage and power and decreased waste and carbon monoxide smog contribution."

The plaintiffs offered to include Claim 3 in the case after being informed that Claim 2 was unpatentable, but they were refused permission to do so by the Examiner. The position of the Patent Office is that neither claim is patentable for the reason that the differences between the subject matter the claims contain and the prior art are such that the subject matter as a whole would have been obvious at the time the invention

was made to a person having ordinary skill in the art. 35 U.S.C. § 103.

The Patent Office Board of Appeals relied upon the following as prior art: a United States Patent to Balzer et al., No. 2,719,520 (October 4, 1955); a United States Patent to Elliot et al., No. 2,587,713 (March 4, 1952); and a United States Patent to Skok et al., No. 2,139,777 (December 13, 1938). Another United States Patent, granted April 14, 1914 to G. A. Arnold (No. 1,093,237), was introduced by the Patent Office at trial.

All of these patents disclose metal coils positioned between the carburetor and engine of an automobile for the purpose of vaporizing the fuel. Each of the coils shown is heated by an electric current which enters the coil from one end through a wire connected to the automobile battery, and leaves the coil at its opposite end through a wire connected to a ground.

The Balzer patent shows a metal coil which is horizontally mounted and wound around an asbestos packing. The Elliot patent also shows a horizontally mounted metal coil, but Elliot's coil is only partially filled with asbestos packing. The Skok patent shows a conically shaped metal coil which is vertically mounted, and which is hollow except for a single rod passing through its center.

The Arnold patent, the most pertinent reference in the case, discloses a hollow metal coil which is vertically mounted, and which has a cylindrical shape. The coil is enclosed in an elongated hollow tube which is placed below the engine and above the carburetor in a system employing an "up draft" carburetor. More modern engines apparently utilize "down draft" carburetors.

The plaintiffs contend that their device is different from Balzer's because Balzer's coil is filled with asbestos and is positioned horizontally; that it is different from Elliot's because Elliot's coil is positioned horizontally and partially filled with asbestos; that it is different from Skok's coil because Skok's coil is conical in shape and has a bar through its center; and that it is different from Arnold's coil because Arnold's coil is enclosed in a long tube which, if used on modern cars, would thrust the carburetor above the hood to such an extent that the driver could not see the road.

In the Court's view, the differences between Arnold's device and plaintiffs' device are essentially three. The first is that the tube which encloses Arnold's coil is relatively long, whereas the tube which encloses plaintiffs' coil is relatively short; the second is that the wire connected to the negative terminal of Arnold's coil leads directly to the rest of the circuit, whereas the wire connected to the negative terminal of plaintiffs' coil forms a small loop before leading to the balance of the circuit; and the third is that Arnold's coil is used in combination with an up draft carburetor, whereas plaintiffs' coil is used in combination with a down draft carburetor.

The Court has studied these differences in detail, and concludes that the Patent Office was wholly justified in finding them to be obvious to persons skilled in the art.

Since the views of the Court as to obviousness apply with the same force to Claim 3 as they do to Claim 2, it will not be necessary for the Court to consider whether Claim 3 might under some theory have been included in the case.

The Court will find for the defendant and against the plaintiffs, and will order that the Complaint be dismissed.

The above Opinion contains Findings of Fact and Conclusions of Law.