The **UNITED STATES** of America, for the Use of **A. TEICHERT & SON, INC.**, a California corporation, doing business under its own name and doing business under the fictitious name of Teichert Aggregates, Plaintiff,

v.

**ANCHOR CONTRACTORS, INC.**, a corporation, and Jack R. Meyers, doing business under the fictitious name of City Appliance & Electric, a joint venture, Anchor Contractors, Inc., a corporation, Jack R. Meyers, doing business under the fictitious name of City Appliance & Electric, and Hartford Accident and Indemnity Company, a corporation, Defendants.

Civ. No. 8875.

United States District Court
N. D. California, N. D.
July 8, 1966.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

McDonough, Holland, Schwartz, Allen & Wahrhaftig and Richard Diebold Lee, Sacramento, Cal., for plaintiff.

Wilke, Fleury & Sapunor and Richard H. Hoffelt, Sacramento, Cal., for Hartford Accident and Indemnity Co.

## MEMORANDUM AND ORDER

HALBERT, District Judge.

In this action, brought pursuant to the Miller Act (Title 40 U.S.C. § 270a et seq.), plaintiff seeks to establish defendant's liability under a bond which purports to secure payment to those supplying goods and services to a federal construction project. Trial was had before the Court sitting without a jury. Following the filing of post-trial memoranda, the matter was submitted for decision.

On or about October 25, 1962, defendant Jack R. Meyers, doing business as City Appliance & Electric (hereinafter called Meyers), entered into a written contract with the Federal Aviation Agency for the construction of a transmitter and light service station at the

Stockton Municipal Airport at Stockton, California. Meyers then secured, pursuant to the Miller Act, a surety bond from defendant Hartford Accident and Indemnity Company (hereinafter called Hartford) in an amount equal to fifty percent of the contract price. The bond, executed on November 2, 1962, on a standard government form (G.S.A. Form 25A, November 1950 edition), provides security for those supplying goods and services to the project in question. The instructions on the back of the form provide in part:

> "4. If the principals are partners, their individual names shall appear in the space provided therefor, with the recital they are partners composing a firm, naming it, and all members of the firm shall execute the bond as individuals."

The significance of that provision will later become apparent.

Three days following the execution of the bond, Meyers entered into a contract with defendant Anchor Contractors, Inc. (hereinafter called Anchor) by which Anchor agreed to assume the responsibility for a complete facility other than the electrical installation. That contract provided that Meyers and Anchor were to share all expenses and profits, though the exact nature of the relationship thus created was not clearly expressed. Thereafter, in the course of its work, Anchor became indebted to use plaintiff for the purchase of construction materials. Upon Anchor's failure to pay the amount due, use plaintiff brought suit against Meyers and Anchor, and a default judgment was entered against them on February 24, 1965. This proceeding is an attempt by use plaintiff to recover upon the surety bond issued by defendant Hartford pursuant to the Miller Act.

The basic issue is use plaintiff's assertion that due to the relationship between Anchor and Meyers (which use plaintiff characterizes as a "joint venture") the admitted failure to give notice pursuant to the Miller Act does not preclude an action upon the bond. The proper legal classification, if one there be, of the re-lationship between Meyers and Anchor, is at best academic, and the issue here to be resolved does not depend upon that answer. It is assumed, *arguendo*, that Anchor and Meyers were, in lawyer's terms, joint adventurers or partners for a single purpose.

The issue thus presented, so far as can be determined, is one of first impression. Broadly phrased, the question is: May a partnership, formed after the execution of a Miller Act bond for a public works contract, be deemed a partnership for the purposes of defining the legal rights which evolve from that contract and bond? In the absence of authoritative guidance, the answer to that question must be found in the broad policies which underlie the statute in question.

In the often-cited case of Clifford F. MacEvoy Co. v. United States, for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163, Mr. Justice Murphy noted:

> "The Miller Act * * * is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." (322 U.S. at 107, 64 S.Ct. at 893)

And, in United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776, Mr. Justice Burton added the observation that:

> "The essence of its policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material. Thus the Act provides a broad but not unlimited protection." (353 U.S. at 216–217, 77 S.Ct. at 797)

Implicit in the above policy is the legislative conclusion that security for those who supply labor and material for public projects will induce the orderly and speedy completion of public works. In that sense legislation such as the Miller Act provides an incentive by insuring compensation to those who contribute

to the project. To that end, the Act extends protection by way of a direct action on the bond to:

"Every person who has furnished labor or material [for a project secured by a Miller Act Bond] * * *. *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the *contractor furnishing said payment bond* shall have a right of action upon * * * giving written notice to *said contractor* * * *." (Title 40 U.S.C. § 270b(a); with emphasis added.)

The critical question raised by the case at bar is whether or not use plaintiff comes within the terms of the proviso noted above. If it does, the admitted failure to provide statutory notice will preclude maintenance of the present suit (See: United States for Use of General Elec. Co. v. Gunnar I. Johnson & Son, Inc., 8 Cir., 310 F.2d 899, 902 and cases there cited). The statute itself poses the two basic questions in that regard:

1. Did use plaintiff have a "direct contractual relationship with a subcontractor * * * ?"; and

2. Did use plaintiff have "no contractual relationship express or implied with the contractor furnishing said payment bond * * * ?"

■ Clearly, Anchor (regardless of the category into which its arrangement with Meyers might be placed) comes within the meaning of the term "subcontractor" set forth in the *MacEvoy* case, supra, where it was held that a subcontractor for purposes of the Miller Act is one "who performs for or takes from the prime contractor a specific part of the labor or material requirements of the original contract." (322 U.S. at 109, 64 S.Ct. at 894). It is thus apparent, so far as the Miller Act is concerned, that use plaintiff had a direct contractual relationship with a concern that meets the broad definition of subcontractor. Use plaintiff, however, asserts that Anchor was something more than a "sub-contractor," in fact, a full partner in the project. That assertion brings into play the second of the two questions noted above.

Preliminarily, it should be noted that the juxtaposition of the terms "subcontractor" and "contractor" exclude the possibility of resort to an intermediate position. In order to apply the statute, lines must be drawn between the two and the definition of one perforce defines the other. Thus, in the case at bar the determination of the meaning of the term "contractor" is determinative of the issue presented.

■ Use plaintiff asserts that because of the relationship between Anchor and Meyers its direct contractual relationship with Anchor must be imputed to Meyers thus removing use plaintiff from the notice requirement. Although that argument is not totally devoid of merit, the Court is of the view that it is erroneous. It must first be observed that the proviso in question requires lack of a contractual relationship with the *contractor furnishing the payment bond.* Here Meyers is that contractor—Anchor was not a party to the bond contract (Note Instruction 4, quoted supra page 476). Secondly, it should be noted that Title 40 U.S.C. § 270a(a) defines "contractor," for purposes of the statute, as the person to whom the bond is issued. Those two matters make it quite plain that Anchor was not a "contractor" within the meaning of the Miller Act.

■ In summary, the Court holds that the determination of the legal relations of the parties to this Miller Act proceeding must be made as of the date of the prime contract and the surety bond issued pursuant thereto. That conclusion fully comports with policy of the Miller Act noted above. In addition, it may be assumed that Congress, in enacting the bonding requirements in public works projects, sought not only to protect those who participate in those projects, but also foresaw that the bonding requirement would serve to eliminate those potential contractors who were so financially insecure as to be unable to

478

procure a surety bond. It is thus fully appropriate that the prime contractor, for purposes of suit under the Miller Act, be the going concern that the surety has expressed a willingness to bond. It is opposed to the Court's sense of equity and of sound public policy to allow the surety's contingent liability to be expanded without notice and without opportunity to object.

The cases relied upon by plaintiff support rather than detract from the conclusion reached. In United States for Use and Benefit of Hallenbeck v. Fleisher Engineering & Const. Co., 2 Cir., 107 F.2d 925, upon which use plaintiff places great reliance, the question involved was whether the particular form of notice given in that case was sufficient to comply with the statute. The case is, of course, inapposite here where it is admitted that no notice at all was given, either to the prime contractor or his alleged "joint adventurer." And, in Noland Co. v. Allied Contractors, Inc., 4 Cir., 273 F.2d 917, the basic question was whether or not the notice filed had been filed within the statutory ninety-day period. In holding that the notice was filed in time, the Court did not reach the issues involved in the case at bar.

 Use plaintiff asserts, however, that even if the Court finds that Anchor was not the prime contractor, plaintiff is nevertheless entitled to proceed upon the payment bond by virtue of a "contractual relationship express or implied" with Meyers. If use plaintiff could prove such a relationship with Meyers, it is entirely possible that it would have the right to proceed without notice pursuant to Section 270b (See, e. g., United States ex rel. Hargis v. Maryland Casualty Co., D.C., 64 F.Supp. 522, 527–528). However, there is nothing in the record now before the Court which might tend to prove that proposition to the required degree. In fact, what evidence there is cuts the other way. Certainly there is nothing in the record which would make the case of American Cas. Co. of Reading, Pa. v. Southern Mat. Co., 4 Cir., 261 F.2d 197, upon which use plaintiff relies,

at all applicable to the case at bar. In that case, the court found justifiable reliance on the part of the use plaintiff growing out of oral representations made by the prime contractor (Compare: Restatement, Contracts, § 90).

■ The cases support the proposition that a surety under the Miller Act ought not be exempted from liability due to a minor default. That is the converse of the case at bar where use plaintiff seeks to extend the surety's liability to cover the acts of an alleged principal who did not exist at the time the bond was written and of whom the bonding company had no knowledge. Absent persuasive authority, this Court will not venture into that legal thicket.

Let judgment be entered in favor of the defendant. Defendant will prepare appropriate findings of fact and conclusions of law, a form of judgment, and all other documents necessary for the complete disposition of this case, and lodge such documents with the Clerk of this Court pursuant to the applicable rules and statutes.

It is so ordered.