**NATIONAL SURETY CORPORATION,**
Appellant,

v.

**The UNITED STATES of America For the Use of WAY PANAMA, S. A.,**
Appellee.

**No. 22645.**

United States Court of Appeals
Fifth Circuit.

May 31, 1967.

Rehearing Denied July 5, 1967.

Dayton G. Wiley, San Antonio, Tex., Henry L. Newell, Balboa, Canal Zone, Peter N. Plumb, Lewin Plunkett, San Antonio, Tex., for appellant.

Fred Much, Houston, Tex., for appellee.

Before HUTCHESON, AINSWORTH and DYER, Circuit Judges.

HUTCHESON, Circuit Judge:

This appeal is from a judgment of the district court,[1] sitting without a jury, which allowed recovery by the use plaintiff Way Panama, S.A. (hereafter appel-

1. United States for Use of Way Panama, S.A. v. Uhlhorn Intern, S.A., 228 F.Supp. 887 (D.C.Z.1965).

lee) against National Surety Corporation (hereafter Surety) on a Miller Act [2] payment bond. Surety urges reversal on two grounds: (1) that appellee failed to give the statutory notice which purportedly was a condition precedent to recovery on the bond; and (2) that the suit is barred by the statute of limitations. We disagree with both contentions, and affirm the judgment.

William B. Uhlhorn, doing business as Uhlhorn Construction Company (hereafter Construction), entered into a contract with the Federal Aviation Agency (FAA) for the construction of a public building. In connection with that contract, Construction, as the prime contractor, caused Surety to issue a payment bond in behalf of all persons supplying labor and material to the project. In the performance of the contract, Construction employed the personnel and equipment of Uhlhorn International, S. A. (hereafter International), a corporation also controlled by Uhlhorn the individual. Appellee thereafter agreed to supply labor and materials to International for the consideration of approximately $178,000. Appellee performed its part of the agreement but received only partial payment from International; it brought suit against International and Surety for the balance. It was admitted that $23,000 was due and owing from International to appellee and an agreed judgment was entered against International alone for that amount. The only question is whether Surety may be held liable under the bond it issued to Construction for the amount owed by International to appellee.

Surety's first defense is that appellee cannot recover on the bond because it failed to give notice of its claim to the prime contractor, Construction, in accordance with the notice provision of the Miller Act, 40 U.S.C. Sec. 270b(a) which provides in pertinent part:

"That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made."

The application and significance of this provision depend on International's relationship to Construction. For if, as Surety contends, appellee was dealing with a subcontractor when it dealt with International, then appellee would have been required to give the 90-day written notice of its claim to Construction, which appellee admittedly did not do. Appellee, on the other hand, argues that the notice provision does not apply under the circumstances of this case. This argument is grounded on the proposition that Construction and International did not stand in the relationship of prime contractor-subcontractor; rather, appellee asserts that the operations of Construction and International were so intermingled by Uhlhorn that they both must be viewed as one and the same business concern with whom appellee had dealt directly. The district court agreed, finding as a fact that "Uhlhorn Construction Company employed personnel, equipment, material, funds and the corporate entity of defendant Uhlhorn International, S.A., a corporation controlled by William Baynes Uhlhorn, *indiscriminately* with those of Uhlhorn Construction Company * * *." 238 F.Supp. 890 (emphasis added). The court said it refused "to permit the prime contractor to escape his obligations and thus relieve his surety by the use of a corporation set up by him and used inextricably by him in the prosecution of the contract * * *." 238 F.Supp. 892.

[1] After careful review of the record, we are convinced there is ample evidence to support the findings and the judgment of the district court. There are several reasons why International should

be considered the same entity as Construction and thus a prime contractor, rather than a subcontractor, with regard to the application of the notice provision. First of all, Uhlhorn himself caused Construction to assign the FAA contract to International; this assignment, although made without the knowledge or consent of Surety, squarely placed International in the position of prime contractor. Furthermore, some applications for permits to import equipment or materials without duty purported that International was the general contractor. Moreover, various contracts with subcontractors executed by Uhlhorn refer to International as the "general contractor." Finally, stationery of both Construction and International was used interchangeably to make purchase orders with the name of one company blotted out and the name of the other substituted.

It is quite clear to us that William B. Uhlhorn operated in the form of Construction or International whenever it suited him. We conclude that with respect to the performance of the FAA contract the two concerns were operated essentially as one entity, namely, the prime contractor. See Markow v. Alcock, 356 F.2d 194, 197–198 (5th Cir. 1966); United States ex rel. and for the use of Korosh v. Otis Williams & Co., 30 F. Supp. 590, 593 (D.Idaho 1939). Compare United States for the use of A. Teichert & Son, Inc. v. Anchor Contractors, Inc., 257 F.Supp. 474 (N.D.Cal. 1966); United States for the Benefit and Use of Westinghouse Elec. Supply Co., 125 F.Supp. 25 (D.Mass.1954). Since appellee therefore did not have a contractual relationship with a subcontractor, the Sec. 270b(a) notice provision did not govern, and it was not necessary for appellee to give Construction the 90-day notice in order to recover on the bond from Surety.

With regard to the limitations defense, 40 U.S.C. Sec. 270b(b) provides that no suit thereunder "shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was sup-plied by him." Appellee filed its original complaint against International on June 14, 1963, which was within a year from the date on which the last material was delivered and labor performed on June 15, 1962. However, Construction was not named in the original complaint. Not until appellee filed an amended complaint on July 30, 1964, was it alleged that International and Construction had been operated as a single entity. Surety insists that the statute of limitations had run on any complaint against Construction. Our conclusion that the two concerns must indeed be considered as a single operation forecloses this contention which is premised on the existence of two separate businesses operated as such.

The judgment was right. It is affirmed.