Joseph L. JOHNSON

v.

**AAA TRUCKING COMPANY and General Teamsters, Chauffeurs, Yardmen and Helpers, Local 470.**

**Civ. A. No. 76–3291.**

United States District Court, E. D. Pennsylvania.

April 28, 1978.

---

Cecil B. Moore, Philadelphia, Pa., for plaintiff.

Carl M. Mazzocone, Philadelphia, Pa., for defendant AAA.

Mark P. Muller, Philadelphia, Pa., for defendant IBT.

## OPINION

FOGEL, District Judge.

Before the Court is a Motion to Amend the Amended Complaint, and Motions for Summary Judgment on behalf of the two defendants, AAA Trucking Company (AAA), and International Brotherhood of Teamsters, Local 470 (Local 470). For the reasons stated below, the motion to amend, and the motions of AAA and Local 470 for summary judgment on the claim of breach of duty of fair representation are granted; the motion of AAA for summary judgment on the claim of discrimination is denied.

### I

The underlying and uncontested facts, as detailed in the motions of the defendants and the response of the plaintiff, are as follows:

On the morning of February 7, 1975, Joseph L. Johnson (Johnson), was employed as a yardman by defendant AAA. At approximately 7:00 a. m. Johnson was instructed to perform dockman duties by his supervisor, Martin Kennelly. Johnson refused to follow the instructions; he stated that since there were dockmen on "layoff", it would be improper under the collective bargaining agreement for him—a yardman—to do dockman work. Johnson was instructed to "punch-out" his time card and was told that his actions were considered as a "voluntary quit."

Instead of punching his time card and leaving the premises, Johnson waited until 8:00 a. m. at which time he explained the situation to Pete DeSalvo, a shop steward. Thomas McCaffrey, business agent for Local 470, and Eugene Bonacci, Vice President of AAA, were present at the trucking company to discuss the discharge of another employee. They considered the problem of Johnson's "voluntary quit" and AAA refused to reconsider its position.

McCaffrey instructed Johnson to "punch-out" and go home. Johnson was told that the union would file a grievance to protest the "voluntary quit."

In accordance with the collective bargaining agreement entered into between AAA and Local 470 on July 1, 1973, the grievance was heard by the Joint Local Committee (JLC), at Motor Transport Labor Relations on February 12, 1975.

At this hearing, Johnson, DeSalvo and McCaffrey presented evidence on behalf of Johnson. When the JLC was unable to reach a majority decision, the case was transferred to the Joint Area Committee (JAC), in accordance with the contract.

After the JLC hearing, Johnson, at McCaffrey's request, met with McCaffrey at the union office to discuss the case. Johnson did not tell McCaffrey that there were witnesses or other evidence which should have been brought to the attention of the JLC. Deposition of Johnson, June 6, 1977, pages 86–93.

On February 25, 1975, a hearing was held before the JAC, which, like the JLC, is composed of an equal number of employer and union members. The evidence presented on behalf of Johnson by McCaffrey, DeSalvo and Johnson tracked the evidence presented to the JLC. The JAC met in executive session after hearing the testimony and held that:

1) The Employer did not discriminate against Johnson, 2) Johnson's actions of February 7, 1975, constituted a willful voluntary quit, 3) The Union's grievance is denied.

Exhibit A to Local 470's Answer to the Complaint.

### II

Plaintiff filed his complaint on October 21, 1976. This complaint contained a Title VII action against AAA as well as allegations charging violation of Section 301 of

the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, by Local 470 for breach of its duty to fair representation and against AAA for breach of the collective bargaining agreement. An initial pretrial conference was held in chambers on February 2, 1977, at which time counsel for plaintiff failed to appear. By Order of the same date, the Court granted plaintiff leave to file an amended complaint within twenty days, noting that failure to do so would result in dismissal of the action.

The Order pinpointed three parts of the original complaint which needed clarification: a) proper identity of the union defendant; b) clarification of plaintiff's allegation of Title VII violations, i. e. whether by Local 470, AAA, or both; and c) clarification as to whether plaintiff received a "right-to-sue" letter with respect to his Title VII cause of action against Local 470, and, if so, the date of that letter.

An amended complaint was filed by plaintiff on February 18, 1977. Paragraph one answered point (a) above by properly naming Local 470. Paragraph two appears to be in response to point (c) above because it states that the Equal Employment Opportunity Commission (EEOC), issued a "Notice of Right-to-Sue" letter on September 10, 1975. The amended complaint also states: " . . . the letter stating in essence that the Commission had determined that there was no reasonable cause to believe that a violation of Title VIII of the Civil Rights Act of 1964. . . . " had occurred.

Attached to the original complaint was a copy of another "Notice of Right-to-Sue" issued July 28, 1976, in which the EEOC found probable cause to believe that the charge against AAA was true. Therefore, although not clearly stated in either complaint, the September 10, 1975 notice is presumably the result of a charge filed against Local 470. It is clear, therefore, that the plaintiff was pleading a Title VII claim against AAA and not against Local 470.

Paragraphs three, four and five of the amended complaint are in response to point (b) above. Plaintiff alleged that the cause of action against Local 470 was based solely on Section 301 of the LMRA because of Local 470's breach of its duty of fair representation.

Instead of clarifying matters, the amended complaint further confused the case because it failed to incorporate by reference the paragraphs of the original complaint. Standing by itself, the amended complaint fails to state a claim upon which relief can be granted.

### III

Defendant AAA bases its motion for summary judgment in part on the fact that the amended complaint abandons all allegations against AAA. However, AAA also presses other contentions which are discussed infra at VII.

Local 470's motion for summary judgment does not raise the deficiency of the amended complaint.

Plaintiff did not explain his obvious error. The motion to amend states:

> 3) It was and is the intention of plaintiff that all provisions [of the original complaint] not so affected shall remain as issues and items to be considered by this court.

■ F.R.Civ.P. 15(a) states that "leave [to amend] shall be freely given when justice so requires." The plaintiff should be afforded the opportunity to test his claim on the merits in the absence of any apparent or declared reasons such as: 1) undue delay, bad faith or dilatory motive; 2) repeated failure to cure deficiencies; 3) undue prejudice to the opposing party; or 4) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■ Applying the facts and circumstances of the present case to the standard set forth by the Supreme Court, we find no evidence of bad faith or dilatory motive on the part of the plaintiff. Although the delay in filing the motion to amend has delayed the eventual trial on the merits by

approximately five months, that factor, alone, is not a sufficient reason for denying leave to amend in the absence of prejudice or bad faith. *Farkas v. Texas Instruments,* 429 F.2d 849 (1st Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1971).

The insufficiency of the amended complaint cannot be construed as a "repeated failure to cure deficiencies." Likewise, amending the complaint as requested continues to place before the Court a cause of action, so the proposed amendment is not "futile." *Foman, supra* 371 U.S. at 182, 83 S.Ct. 227.

The important factor to consider is the possible prejudice to the opposing party. Defendant AAA contends that the motion to amend is highly prejudicial because it was filed almost six months after the amended complaint was filed.

Plaintiff attended several pretrial conferences after the amended complaint was filed at which time both defendants made clear their intentions to file either motions for summary judgment or motions to dismiss based on the insufficiency of the amended complaint. Relying on plaintiff's failure to amend the amended complaint, AAA availed itself of only limited discovery. Plaintiff's instant motion was filed in response to the motions for summary judgment.

Leave to amend has been granted at various stages of litigation, even after arguments on a motion for summary judgment. *Lloyd v. United Liquors Corp.,* 203 F.2d 789 (6th Cir. 1953).

Neither AAA nor Local 470 will be prejudiced by the amendment requested. Any hardship caused by the lack of sufficient discovery can be easily avoided by extending the discovery deadline and by postponing the trial date. *U. S. for Use of Way Panama, S. A. v. Uhlhorn Int'l., S. A.,* 238 F.Supp. 887 (D.C.Canal Zone 1975), *aff'd on other grounds sub nom. National Sur. Corp. v. U. S. for Use of Way Panama, S. A.,* 378 F.2d 294 (5th Cir.), *cert. denied,* 389 U.S. 1004, 88 S.Ct. 561, 19 L.Ed.2d 598 (1967).

AAA also argues that it has been prejudiced by plaintiff's repeated failure to comply with the procedural rules of the Court. Plaintiff failed to attach a Memorandum of Law to his motion; the motion was filed the day after it was mailed to the opposing parties rather than five days later; the motion did not include the new proposed complaint; and the motion did not state with particularity the grounds for the motion. F.R.Civ.P. 7(b) and 15; Local Rule of Civ.P. 36.

The procedural irregularities detailed in AAA's motion are not of such magnitude as to require denial of the motion; the motion to amend was filed with the Clerk of the Court on August 11, 1977, the day after it was mailed to the opposing parties. However, by Order of the Court, dated August 30, 1977, counsel for the defendants were granted until September 9, 1977, to respond to the motion. AAA filed a response on September 9, 1977. Local 470 did not respond to the motion to amend. Therefore, sufficient time was given for defendants to reply.

Even though the motion did not include a copy of the proposed second amended complaint, the final result intended was clear. Plaintiff desired to add to the original complaint the five paragraphs of the amended complaint. There is no indication that the amended complaint was to be considered by itself. The motion does state with particularity the ground for the motion, to wit, plaintiff intended to, but inadvertently failed to incorporate the original complaint by reference.

The defendants were not prejudiced by any of the above procedural problems whether considered individually or jointly. It would be contrary to the spirit of the Federal Rules of Civil Procedure for a court to avoid a decision on the merits by reverting to outmoded and wisely discarded concepts that deified form by offering up the sacrifice of substance. *Foman, supra,* 371 U.S. at 181, 83 S.Ct. 227.

AAA also argues that it will be prejudiced if the motion to amend is granted because the statute of limitations would be

circumvented. This argument relies on the 90 day limit for filing a suit following notice of right to sue from the EEOC. 42 U.S.C. § 2000e–5(f)(1). When the amended complaint was filed, AAA maintains, it acted as a withdrawal of the suit against AAA since only Local 470 was a named defendant. At this point in the action, concludes AAA, to reassert the complaint against AAA is tantamount to reinstating a new action after the 90 day period has been exhausted.

This argument has no basis in fact. The purpose of the amended complaint was to clarify the three items detailed in the Order of February 2, 1977. It does not constitute a new cause of action. Plaintiff has not requested blanket permission to change his complaint; he has sought only leave to incorporate by reference the terms of the original complaint as part of the amended complaint.

Even if there would be some prejudice to the defendants, a thesis not established, we must balance the prejudice against the hardship to the moving party if he is denied leave to amend. *Scott v. Crescent Tool Co.*, 306 F.Supp. 884 (N.D.Ga.1969).

We exercise our discretion in favor of plaintiff. *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77, *reh. denied*, 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971). After full consideration of the alleged prejudice to defendants, we are persuaded that the motion to amend should be granted.

## IV

Considering the complaint and its amendment as one, we now turn to the motions for summary judgment.

■ The decision of a joint employer-union committee is enforceable in the federal courts under Section 301 of the LMRA, just as though it was a decision of an impartial arbitrator, when the contract provides that the committee's award is final and binding. *General Drivers v. Riss and Company*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). The Supreme Court clearly enunciated in the Steelworkers Trilogy a strong Federal policy favoring the settlement of labor-management disputes by the means chosen by the parties. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). To support the finality of arbitration awards, the Supreme Court has held that federal courts have only limited powers of review over arbitrator's decisions. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969).

That scope of review limits our decision to a single issue—did the decision stem from the powers granted by the collective bargaining agreement. *United Steelworkers v. Enterprise Wheel and Car Corp., supra; Ludwig Honold Mfg. Co., supra.* In this case, Johnson has charged the two defendants with various acts, but has not challenged the grievance process.

■ Plaintiff relies on an exception to the finality of arbitration awards first articulated in *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). *See also, Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). When the collective bargaining agreement gives the union exclusive control over the grievance procedure and arbitration, the individual employee's rights under the contract are limited by the union's duty of fair representation. This duty is violated when the union has arbitrarily ignored a meritorious grievance or processed it in a perfunctory fashion. The employee must prove that the union breached its duty to represent the employee fairly during the grievance proceeding, and that the breach of duty undermined the integrity of the arbitration process. Once this is established, the employee can demonstrate that the employer discharged him in violation of the contract. Proving the union's breach of its duty is a strict prerequisite to the action against the employer. *Hines, supra*, 424 U.S. at 569, 96 S.Ct. 1048.

If the union fails in its duty while presenting the case at arbitration, the individual is not bound by the award. Otherwise, "[w]rongfully discharged employees would be left without jobs and without a fair opportunity to secure an adequate remedy." *Hines, supra* at 571, 96 S.Ct. at 1060. Quoted in C. W. Summers, *The Individual Employee's Rights Under the Collective Agreement; What Constitutes Fair Representation?*, 126 U.Pa.L.Rev. 251, 262 (Dec. 1977).

The union's duty to fairly represent its members is implied from the union's position as sole spokesman for its members. Although the standards are not clearcut, a union violates its duty when its conduct is "arbitrary, discriminatory, or in bad faith," *Vaca, supra*, 386 U.S. at 190, 87 S.Ct. at 916; *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), or "there is substantial reason to believe that a union breach of duty contributed to an erroneous outcome." *Hardee v. North Carolina Allstate Services, Inc.*, 537 F.2d 1255 (4th Cir. 1976); *Bazarte v. United Transportation Union*, 429 F.2d 868, 872 (3d Cir. 1970).

Plaintiff alleged that "Local 470 violated § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, by a breach of their duty of fair representation" and that "Local 470, further failed to vigorously prosecute the grievance filed by plaintiff. . . ." Complaint, ¶ 9 and ¶ 15. Plaintiff further alleged that Local 470 "failed to protect his rights through vigorous prosetution (sic) and/or collusive and conspiratorial action between" Local 470 and AAA. Amended Complaint, ¶ 5.

Plaintiff does not allege that Local 470's actions were "arbitrary, discriminatory, or in bad faith."

Plaintiff was unable, during his deposition on June 6, 1977, to state what Local 470 failed to do during the JLC and JAC hearings which constituted failure to adequately represent him. Johnson stated that his classification was not presented into evidence because his identification card was not presented. However, he admitted that his yardman classification was orally placed into evidence. Deposition of Johnson, pages 86–93.

"The allegations of a complaint alleging the breach of a union's duty of fair representation must contain more than conclusory statements alleging discrimination" in order to be actionable. *Balowski v. International U., United A., A. & A., Imp. Wkrs.*, 372 F.2d 829, 835 (6th Cir. 1967). Quoted in *Hubicki v. ACF Industries, Inc.*, 484 F.2d 519, 526 (3d Cir. 1973); *Gainey v. Bro. of Railway Employees*, 313 F.2d 318, 323 (3d Cir. 1963).

In *Hubicki*, the Third Circuit held that allegations of a complaint asserting breach of a union's duty of fair representation failed to offer concrete facts from which the presence of hostile discrimination could be inferred.

## V

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered" if it is shown that there is no "genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Plaintiff's response to Local 470's motion raises six potential factual issues.

1) Did the decision of the JAC draw its essence from the applicable collective bargaining agreement? Plaintiff cites Article 52 of the contract, "Work In Other Classifications", as relevant. Exhibit D to Plaintiff's Answer to Motions for Summary Judgment.

As noted above, the complaint does not demand vacation of the JAC award on the basis of a failure to the committee's award to "draw its essence" from the contract. This matter is not properly before us and is therefore not material to the issue of breach of duty of fair representation. When a breach of the duty is not established, the court will not review the arbitrator's decision. *Warren v. Teamsters*, 544 F.2d 334, 341 (8th Cir. 1976).

2) Does the decision of the JAC have the same force and effect of an arbi-

tration award? This is not a viable issue since the Supreme Court has clearly stated that a panel award is as enforceable as an arbitration award when it is final and binding. *General Drivers v. Riss and Co., supra.*

■ 3) Was there improper collusion among the members of the committee panel? As stated above, Johnson has not attacked the committee's decision in his complaint; he has alleged failure of fair representation. Despite this lack of relevance we have reviewed the transcript pages appended to the plaintiff's answer as Exhibit "E". We find that they do not show that the committee members displayed a negative attitude toward Johnson, that they disrespected him, or that they tried to rush him through his presentation.

The transcript shows that it was Johnson who was belligerent toward the panel members and not the opposite. The JAC gave Johnson every opportunity to present his case fully and completely.

Rather than rushing the plaintiff through his case, the panel merely tried to make Johnson focus on relevant matters. For instance, he attempted to discuss occurrences dated more than nine months prior to the contested "voluntary quit." The contract forbade AAA from introducing evidence of an employee's work record more than nine months old. Therefore, plaintiff was correctly limited as to the evidence he could submit.

4) Should Local 470 have brought a grievance on behalf of the plaintiff when it knew that he was being forced to do work outside of his classification? There is no indication that Johnson asked Local 470 to file a grievance over his work assignments prior to the incident in question. In addition, there is no allegation in either complaint concerning Local 470's failure to prosecute an earlier grievance. Therefore, whether the union brought an earlier grievance is not material to the matters at issue.

5) Did Local 470 properly prepare for the JLC and JAC hearings? In *Hines* the Supreme Court held that the breach of the duty of fair representation requires more than demonstrating "mere errors in judgment." 424 U.S. at 571, 96 S.Ct. 1048. Although this question goes to the asserted negligence of Local 470, as opposed to arbitrary and capricious activity, there is no basis to support this issue. The sections of Johnson's deposition cited by plaintiff as Exhibit "A" show that Johnson had opportunity, prior to the second hearing, to inform Local 470 of information not submitted at the first hearing. Johnson failed to do so. Johnson was unable to state any exculpatory details which were not placed before both panels. Johnson did not tell Local 470 at any time, according to his own deposition, that there was additional information, or that he was displeased with Local 470's representation.

■ 6) Did the failure of Local 470 to contest the "irregular discharge" of plaintiff constitute gross misfeasance, malfeasance or nonfeasance? The union did grieve and represent Johnson in his contest of the alleged irregular discharge. Again, even if the union was negligent, this does not show the requisite arbitrary and capricious action. In addition, both panels found that Johnson voluntarily quit his job. Therefore, there was no reason for the contractual requirement of giving notice to have been invoked.

## VI

We find that no factual dispute exists and that the complaint does not state a cause of action against Local 470 for breach of its duty of fair representation. Accordingly, the companion action against AAA for breach of the contract must also be dismissed. *Hines, supra* at 570, 96 S.Ct. 1048.

## VII

Johnson filed a charge of discrimination with the EEOC on March 27, 1975. He charged that

"I was discriminated against on the basis of my race, Black. I was fired from my position as a 'Yardman' (in-terminal truck driver) for refusing a request to

work out of my classification (on the loading platform). . . . White employees are not asked to work out of classification."

On February 18, 1976, the EEOC determined that there was probable cause to believe that the charge was true. It found that 13 white employees had been given warnings in 1975 by AAA for failure to follow instructions. One white employee was discharged following eight written warnings in a nine-month period. Johnson was the only person who was terminated for that offense without a warning letter.

The EEOC also found that when the white employee who replaced Johnson refused to report for work he was merely warned about insubordination by the same supervisor who had terminated Johnson.

The EEOC concluded that the reason "for the different treatment" of Johnson "was his race."

Conciliation efforts were unsuccessful and the EEOC issued a Notice of Right to Sue letter on July 28, 1976. This action was filed on October 21, 1976, within 90 days.

The issue of discrimination was considered by the JAC and it found that "the Employer did not discriminate against Johnson." Except for the findings of the EEOC, there is no evidence on the record which raises a question of fact concerning discrimination. The plaintiff's own deposition fails to state one instance of discrimination besides the discharge in question. Johnson's vague statement on page 42 of the deposition that:

[O]ver the years I observed how certain things took place, who got what, who was overlooked doing this when they should have say, for instance, been fired for the things that they were doing, and due to the fact that I got into this difficulty with Marty Kennelli that they would fire me, and these white boys, nothing ever was done about what they were doing.

■ The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists. The party opposing a summary judgment motion is to be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists that justifies proceeding to trial. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ The allegation of discrimination in the complaint and the findings of cause by the EEOC are more than sufficient to raise an issue of fact. AAA has not sufficiently shown the absence of any genuine issue to any material fact. Accordingly, the motion for summary judgment on the Title VII charge is denied.