**Leon SLAVITT, Plaintiff-Appellant,**

v.

**Gilbert KAUHI, Abraham Kapana, and Spencecliff Corporation, Ltd., Defendants-Appellees.**

**No. 20003.**

United States Court of Appeals
Ninth Circuit.
Oct. 27, 1967.

Albert Gould, Levinson, Cobb & Gould, Honolulu, Hawaii, for appellant.

Burnham H. Greeley, Alexander Marrack, Robertson, Castle & Anthony, Honolulu, Hawaii, for appellees.

Before POPE, BROWNING and DUNIWAY, Circuit Judges.

POPE, Circuit Judge.

The appellant brought this action in the court below to recover damages for personal injuries which he alleges he received following his attendance as a patron in a cocktail bar known as the Barefoot Bar located in the Queen's Surf at Honolulu, Hawaii, on September 23, 1960. The appellees defendants are the Spencecliff Corporation, Ltd., an Hawaiian corporation, owner and operator of the Barefoot Bar at the time in question, and Abraham Kapana, a citizen of Hawaii, who was an employee of the corporation and a manager of the place. The plaintiff appellant is a citizen of California who was then employed as a flight navigator for an airline operating between California and Hawaii.

Slavitt had arrived in Hawaii early on September 22 and had several days layover there. After dinner that evening, accompanied by a young lady, he visited several places where intoxicating liquors were served. At the Hawaiian village, where they arrived between 9 and 10 P. M., they had a drink. They then went to the Moana Hotel where they again had a drink; and finally they went to the Queen's Surf and the Barefoot Bar where they arrived between 1 or 1:30 A.M. on September 23. The Barefoot Bar was located upstairs and was reached from the street by several flights of stairs;— one flight of six steps, then another of about twenty steps, and finally, just before the bar entrance was reached, another flight of six steps.

It is not entirely clear just how many drinks the plaintiff consumed during the evening or just what was their potency or the effect they had on him. The evidence seems clear that at the end of the couple's stay at the Barefoot Bar, the plaintiff's companion, the young lady, had completely "passed out" and there is some evidence that he himself was intoxicated and unsteady on his feet.

The evidence is that just before closing time, which was at 3 A.M., the defendant Kapana went to the plaintiff's table and asked plaintiff and his companion to finish their drinks as it was time to close. According to Kapana's testimony the plaintiff became belligerent and boisterous. Plaintiff demanded to see Kapana's identification which Kapana complied with by presenting a special police officer's badge. Kapana says that Slavitt then stepped on Kapana's white shoes; that Slavitt struck him twice; that Kapana then decided to take Slavitt out of the place and took him by his right arm and led him to the top of the stairs at the entrance of the Barefoot Bar. He testified that when he left Slavitt there, standing by himself, he was "a little bit unsteady on his feet". Kapana had turned and started to walk back to the table where Slavitt had been sitting when he heard the thud on the stairs made by Slavitt's fall. Slavitt had fallen to the foot of the six stair flight. According to Slavitt he was not intoxicated, was not under the influence of liquor, and he was not abusive; he had asked to see Kapana's badge; then Kapana became very angry and picked him up bodily and carried him to the head of the stairs and threw him down the stairs. Slavitt complains of injuries to his back suffered in that fall.

It will be noted that according to Slavitt's testimony he was the victim of a willful assault. According to the pretrial order plaintiff's theory was stated as follows: "Plaintiff contends that on the morning of September 23, 1960, while a

patron of the aforesaid Queen's Surf, he was, without just cause or provocation, negligently or intentionally thrown or pushed down the stairs at the said Queen's Surf by either Defendant Kauhi or Defendant Kapana, thereby suffering personal injury." The same pretrial order states Kapana's contention as follows: "Defendant Kapana alleges that he escorted Plaintiff to the top of the stairs and then went back into the entertainment area. Defendants further allege that if the plaintiff was injured that it was as a result of his own negligence and assumption of risk."

When plaintiff commenced his action he was clearly in doubt as to just who had thrown him down the stairs. The operating corporation had an employee named Gilbert Kauhi who apparently was a doorkeeper. At first plaintiff named Kauhi and the corporation as the defendants. Later on he apparently picked up Kapana's name and was granted leave to amend his complaint by making Kapana an additional defendant. The amended complaint alleged that on September 23, 1960, "without just cause or provocation and with great force and violence, the defendant Gilbert Kauhi and/or Abraham Kapana, did violently, wantonly and maliciously assault the plaintiff, all within the scope and course of his and/or their employment and authority."

At the trial it became apparent that Kauhi had not been present at the time plaintiff received his injuries and he was dismissed as a defendant. Near the close of the trial and when the court was settling instructions the plaintiff asked leave to amend his complaint and modify paragraph 2 thereof to read as follows: On September 23, 1960, without just cause or provocation and with great force and violence, the Defendant Abraham Kapana, did violently, wantonly and maliciously assault the Plaintiff, or negligently caused the Plaintiff to receive injury, all within the scope and course of

his employment and authority." Leave was asked to further amend the complaint by striking out all reference to punitive damages. Both amendments were granted.

It is plain that the amendment referring to negligence on the part of Kapana arose out of Kapana's testimony. Kapana testified that as the hour of closing approached on that morning of September 23, at approximately 2:45 A.M., he was told by a cocktail waitress that there was an individual who was getting belligerent and boisterous, referring to Slavitt. Kapana then went over to Slavitt's table and asked him to finish his drink. It was at this time that Slavitt and Kapana had the exchange of words previously mentioned with the demand for Kapana's identification, the blows struck and the decision of Kapana to lead Slavitt to the stairway. Kapana's testimony was that when he left Slavitt standing at the top of the stairs Slavitt was alone and a "little unsteady on his feet" and "highly intoxicated".[1]

The court subsequently reversed itself about allowing amendment of the complaint stating: "On reconsideration, the Court feels that the pure negligence theory which was allowed this morning goes beyond the theory upon which this case was tried, as stated here, that he was thrown or pushed negligently or intentionally. The theory the plaintiff now is attempting to depend on is that he fell due to negligence, in which he was neither thrown nor pushed, and I feel that it is a departure from the theory, and for that reason I must disallow it. You may have your exceptions, Mr. Gould, but I think the Court was mistaken in allowing that."

The first specification of error by the appellant is this action on the part of the court in disallowing the amendment. The case presents the rather unusual situation of plaintiff trying the case upon the theory that he had been assaulted by be-

---

1. The doorman Kauhi testified that about 2:40 A.M. he had first approached Slavitt at his table about leaving the place since closing time was approaching.

Kauhi testified that at that time "it looked like he [Slavitt] was slightly inebriated, * * * I would say he was pretty well under the weather."

ing bodily thrown down the stairs, while the testimony of Kapana, if believed, would indicate that after leading a drunken man to the head of the stairs, he, Kapana, left the man standing there in a position where he might fall. Obviously the plaintiff wanted to take advantage of this version of the transcript in order to base his claim upon alleged negligence on the part of Kapana.

The record shows that plaintiff did attempt to have the jury instructed with respect to this theory of negligence. His requested instruction No. 13 was as follows: "A bar operator, in removing an intoxicated patron from the premises, must exercise due care in such removal, and may not place said patron in such a position that he knows or in the exercise of reasonable care should know that harm to the patron will result thereby." This instruction was refused and error is specified on the part of the trial court in refusing to give it.

Plaintiff also requested an instruction No. 22 as follows: "Negligence is a failure to use ordinary care, that is, failure to do what a reasonable and prudent person would ordinarily have done under the same or similar circumstances, or doing what such a person under the same or similar circumstances would not have done." Refusal of the court to give that instruction is also specified as error.

Appellant also asserts that the court erred in giving an instruction to the effect that to establish his case plaintiff must prove that the defendant Kapana bodily picked up the plaintiff and threw him down the stairs.[2]

The outcome of this appeal is dependent upon the applicability of the provisions of Rule 15, Federal Rules of Civil Procedure. This rule, which relates to amendment of pleadings, provides that: "(b) * * * When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The same section of the rule also provides that even if evidence is objected to on the ground it is not within the issues made by the pleadings, "the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him. * * *"

We are dealing here with a claim by the appellant that negligence of Kapana in leaving the intoxicated plaintiff alone at the head of the stairs should have been treated as an issue in the case. Plaintiff assigns error of the court in backing away from the amendment which it had first allowed to be made injecting the issue of negligence in the case. He also assigns error in the failure of the court to give his offered instruction to the jury to the effect that they could consider this question of negligence or lack of reasonable care in placing plaintiff in a position where he might come to harm.

Whether an amendment to a pleading should be permitted is ordinarily a matter within the discretion of the trial court. Caddy-Imler Creations, Inc. v. Caddy, 9 cir., 299 F.2d 79, 84. But the

---

2. Some of the requests for instructions and exceptions to the failure of the court to give instructions are not to be found in the customary place in the record following the charge to the jury. The record shows that after the jury was charged, and excused temporarily the court made the following statement and request for stipulation: "I have taken this form of temporary action so as to permit you gentlemen to preserve, more clearly, any objections or privileges or rights you may have—you may feel that you have. So you may now state any objections you have.

I might state that in line with what the Court suggested earlier in the conferences relating to proposed instructions, it may be at this time stipulated, and the Court will order—unless you object to it—that all objections made previously, before the court read the instructions, in our deliberations, may be considered as having been made at this time, with the same effect as if made at this time, and before the jury retires. Is that agreeable?" This proposal was agreed to by the parties.

case before us is not an ordinary one since there was received without objection the testimony of Kapana that he went to the plaintiff's table and took him by the arm and firmly led him to the head of the stairs and left him there knowing that he was unsteady on his feet and to a degree intoxicated. Of course the defendants generally owe no duty to look after or care for a customer who has become intoxicated; but in this case Kapana took affirmative action and this imposed upon the defendants a duty of reasonable care.[3]

It would appear therefore that there is basis for arguing that the issue of negligence should be treated as if it had been raised in the pleadings for the reason stated in the first portion of the quotation from Rule 15(b), supra, which refers to the issues being tried by express or implied consent of the parties. This court has had occasion to apply that portion of the rule under which pleadings may be said to be deemed amended. United States v. Cushman, 9 cir., 136 F. 2d 815, 817, cert. denied 320 U.S. 786, 64 S.Ct. 194, 88 L.Ed. 473; Shelley v. Union Oil Co. of Cal., 9 cir., 14 Alaska 287, 203 F.2d 808, 809; Glens Falls Indemnity Co. v. United States ex rel. and to Use of Westinghouse Elec. Supply Co., 9 cir., 229 F.2d 370, 375.

This court, having in mind the provision of Rule 15(a), that leave to amend "shall be freely given when justice so requires", has found abuse of discretion when the district court has refused leave to amend. Such a case was Kirk v. United States, 9 cir., 232 F.2d 763, 770, where we used language which might be applicable in this particular case: "After all, the plaintiffs were seeking no more than to make the complaint conform in these respects with the assertions made by the defendant itself in its own answers to interrogatories and responses to requests for admissions. For the court to say: No, you pleaded it that way the first time and although it is admitted by the defendant that the facts are otherwise, yet you will be held to your original allegation, seems to us to be wholly unwarranted and a ruling operating to avoid ascertaining the true facts in this case." To the same effect see Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 2d 222, cited in Stiles v. Gove, 9 cir., 345 F.2d 991, 994; see also Northwest Orient Airlines, Inc. v. Gorter, 9 cir., 254 F.2d 652, 653; Rosenberg Bros. & Co. v. Arnold, 9 cir., 283 F.2d 406.

■ The controlling question here is whether the trial court abused its discretion in denying the requested amendments and whether in view of the state of the testimony given by the defendant Kapana the court should have instructed the jury that they could predicate a verdict for the plaintiff upon negligence on the part of Kapana if they found such to have been the fact.

We believe that under the circumstances here we must hold that the court was in error in these respects. Accordingly the judgment is reversed and the cause is remanded for a new trial.

---

3. See Prosser on Torts, 3d ed., p. 339: "If there is no duty to come to the assistance of a person in difficulty or peril, there is at least a duty to avoid any affirmative acts which make his situation worse. * * * There may be no duty to take care of a man who is ill or intoxicated, and unable to look out for himself; but it is another thing entirely to eject him into the danger of a railroad yard; and if he is injured there will be liability. But further, if the defendant does attempt to aid him, and takes charge and control of the situation, he is regarded as entering voluntarily into a relation which is attended with responsibility."