H. P. Hood & Sons, Inc. *v.* Ford Motor Co.

H. P. HOOD & SONS, INC. & another[1] *vs.* FORD MOTOR COMPANY; and a third-party action.[2]

Suffolk.    November 6, 1976. — April 6, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Negligence,* Manufacturer of motor vehicle. *Motor Vehicle,* Defect. *Indemnity.* *Agency,* Scope of authority.

In an action against the manufacturer of a truck by a driver injured when its "steering wheel was torn from his hands," he was "buffeted about the cab," and the truck turned over, evidence that the accident was caused by defective rivets and an improper fastening of a front bracket, and that the condition of the rivets was "strictly a manufacturing defect," warranted a finding of negligence of the defendant. [71-73]

In an action at common law by a truck driver against the manufacturer of the truck for negligence with respect to defective rivets which caused a wheel to be displaced and the truck to overturn and injure the plaintiff, it was not a valid defense that the defendant had fully complied with the National Traffic and Motor Safety Act of 1966, 15 U.S.C. § 1381 et seq. (1970), before the accident through notification of the defect to the owner of the truck, the plaintiff's employer, by letter and conferences [73-76]; nor was it a valid defense that the defendant had instituted a free recall and repair program with the truck owner [73-76].

In an action by the manufacturer of trucks against a corporate purchaser to recover on an alleged contract to indemnify the plaintiff for all damages recovered by the defendant's truck driver arising out of an accident caused by defective rivets in a truck, evidence did not warrant a finding that a contract was entered into between the plaintiff and any representative of the defendant expressly or

[1] William Terranova.

[2] Ford Motor Company *vs.* H. P. Hood & Sons, Inc.

impliedly authorizing it to agree to repair defective trucks or to indemnify the plaintiff for its negligence with respect to their condition, and a directed verdict for the defendant was properly allowed. [76-78]

CONTRACT AND TORT.   Writ in the Superior Court dated March 18, 1969.

The action was tried before *Lynch, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*John L. Lyman* (*Carl G. Bergstedt* with him) for Ford Motor Company.

*Philander S. Ratzkoff* (*Richard L. Neumeier* with him) for William Terranova.

*S. George Bromberg* for H. P. Hood & Sons, Inc.

QUIRICO, J.   This is an action in tort and contract, brought originally by H. P. Hood & Sons, Inc. (Hood), and its employee, William Terranova, against Ford Motor Company (Ford), and Toby Ford Sales, Inc. (Toby), to recover for injuries to person and property sustained by the plaintiffs when Terranova was involved in a motor vehicle collision in the course of his employment with Hood. At the time of the collision, he was operating a truck which had been manufactured by Ford and sold by its dealer Toby to Hood.

In the plaintiffs' declaration, Terranova alleged basically that he sustained serious personal injuries as the result of a defective condition of the truck which was caused by the negligence of the defendants and which was discoverable by a reasonable inspection. Hood also alleged the defendants' negligence and further alleged in essence that the defendants committed breaches of the warranties of merchantability and fitness of the truck for a particular purpose. Hood claimed that by reason of such negligence and breaches of warranties it sustained serious damage to the truck, its contents, and refrigerating equipment installed in it.

Ford commenced a third-party action against Hood originally in tort for negligence, but later amended to an action in contract, for indemnification for any and all damages recoverable by Terranova against it.[3] Prior to trial, Hood waived its warranty counts against Ford, leaving only the negligence counts of Hood and Terranova against Ford in the original action and Ford's count against Hood for indemnification in the third-party action at issue for trial.

The case was tried to a jury in the Superior Court and at the close of the evidence, Ford moved for directed verdicts in its favor in the original action. The motion was denied by the judge. The jury returned a verdict for Terranova in the sum of $21,500 on his count against Ford, but returned a verdict for Ford on Hood's count in the original action. In Ford's third-party action, Hood's motion for a directed verdict in its favor was allowed. The case is before us on Ford's exceptions (a) to the denial of its motion for a directed verdict on Terranova's count in the original action and (b) to the allowance of Hood's motion for a directed verdict in the third-party action brought against Hood by Ford. There was no error.

1. *Denial of directed verdict in Terranova's negligence action.* In considering the propriety of a judge's ruling on a motion for directed verdict, we consider the evidence most favorable to the plaintiff or plaintiffs, disregarding evidence which tends to prove the contrary. *Fialkow* v. *DeVoe Motors, Inc.,* 359 Mass. 569, 573 (1971). *Kelly* v. *Railway Express Agency, Inc.,* 315 Mass. 301, 302 (1943). "If upon any reasonable view of the evidence there is found any combination of circumstances from which a rational inference may be drawn in favor of the plaintiff, then there was no error in the denial of the motion, even if there may be other and different circumstances disclosed in the evidence which, if accepted as true by the jury, would support

---

[3] Toby also commenced a third-party action against Hood for indemnification, but it discontinued said action prior to trial after Hood and Terranova discontinued their actions against it.

a conclusion adverse to the plaintiff." *Stewart* v. *Roy Bros.,* 358 Mass. 446, 448 (1970), quoting from *Howes* v. *Kelman,* 326 Mass. 696, 696-697 (1951). Applying this test to the present case, we conclude that there was sufficient evidence to warrant the jury in finding for Terranova on the issue of Ford's negligence and that, therefore, the judge did not err in denying Ford's motion for a directed verdict on his count.

We summarize the evidence most favorable to Terranova on this issue. Terranova was employed by Hood as a truck driver. The truck which was assigned to him and which he regularly drove was one of a number of such vehicles manufactured by Ford and purchased by Hood from Toby, a Ford dealer. On June 7, 1968, Terranova was operating the truck in the course of his employment. As he drove the truck up a hill at a speed of about twenty-five to thirty miles an hour, "all of a sudden something violent happened in the truck. The steering wheel was torn from [his] hands, and then [he] had a tremendous sensation of going to the right, just violently going to the right . . . ." Terranova was buffeted about the cab of the truck, temporarily losing consciousness, and the truck turned over onto its side and came to a stop.

An expert witness called by the plaintiffs testified that in his opinion the accident was caused by a right front spring hanger bracket on the truck which was improperly fastened and which separated from the frame rail. The witness testified further that this condition "allowed the right front wheel to be displaced rearward, where it contacted the inside of the right front wheel well, . . . [that t]his motion of the right front wheel rearward forced the vehicle into a sharp right turn, [that t]he vehicle subsequently rode over its own wheel and axle assembly at the rear of the right front wheel, [and that t]his forced the right front of the vehicle up into the air and caused this truck to roll over with its left side down." He testified in addition that the defective condition of the rivets which caused the improper fastening of the front spring hanger bracket was "strictly a manufacturing defect."

An expert witness called by Ford testified that such defective rivets should have been discoverable by an inspector at Ford and that the inspection process at Ford failed to the extent that Ford vehicles were distributed with malformed rivets. It further appeared from the evidence that as of the date of the accident the truck had been driven no more than 1,637 miles and that prior to the accident Terranova had never experienced any mechanical difficulty with the truck nor noticed anything unusual about it.

The evidence summarized above was sufficient to warrant a finding that Ford had been negligent in manufacturing the defective truck and in failing to discover such defect by reasonable inspection. *LeBlanc* v. *Ford Motor Co.*, 346 Mass. 225, 229-230 (1963). *Carter* v. *Yardley & Co.*, 319 Mass. 92, 96 (1946). The jury so found. Indeed, Ford appears not to dispute this finding, arguing instead that it should be held as matter of law to have proved a valid defense to the action on a showing of good faith compliance with relevant provisions of the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1381 et seq. (1970), and a demonstration that it has made reasonable provisions for free repairs of defects covered by a vehicle recall program instituted by it. We disagree.

At all times relevant to this case, 15 U.S.C. § 1402 (Supp. II 1965), provided in pertinent part as follows: "(a) ... Every manufacturer of motor vehicles shall furnish notification of any defect in any motor vehicle or motor vehicle equipment produced by such manufacturer which he [the manufacturer] determines, in good faith, relates to motor vehicle safety, to the purchaser (where known to the manufacturer) of such motor vehicle or motor vehicle equipment, within a reasonable time after such manufacturer has discovered such defect.

. . . .

"(c) ... The notification required by subsection (a) of this section shall contain a clear description of such defect, an evaluation of the risk to traffic safety reasonably related to such defect, and a statement of the measures to be taken to repair such defect." It is clear that Ford did furnish

Hood with notification of the possibility that the Ford trucks purchased by Hood contained a defect relating to motor vehicle safety. Such notification was accomplished by means of a letter, pertinent portions of which are reproduced in the margin,[4] and a series of conferences between representatives of Ford and Hood. Terranova raises a question, which we need not decide, as to the sufficiency under the statute of the notification provided by Ford. Even assuming that Ford's notification was in full compliance with the Federal standards, such compliance in and of itself does not establish a defense to this action at common law. As provided in 15 U.S.C. § 1397 (c) (Supp. II 1965): "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from liability under common law." See *Larsen* v. *General*

---

[4] The letter read in pertinent part as follows:

"March 27, 1968

Dear Owner:

Our records indicate that you have taken delivery of a 1967 or 1968 Model medium or heavy duty truck or bus. We have recently learned of . . . [a condition] which could interfere with control of your vehicle. . . . [This] involves possible failure of the rivets used for attaching the front spring rear hanger bracket to the frame. Rivet failure would allow the bracket to separate from the frame imposing severe loads at the front bracket. Should the front spring disengage from the front bracket the axle will shift and loss of steering control could result. . . .

To prevent . . . [this condition] from interfering with the safe operation of your vehicle, we ask that you promptly contact your Ford dealer to make arrangements for the necessary correction. Your dealer also will inspect and correct associated components as required while your vehicle is at his dealership. . . .

The enclosed customer notification and authorization form will verify to your dealer that this service is to be performed at no charge to you and that your vehicle is one of those requiring service. The dealer will return the form to us so that we can be sure that your vehicle has been corrected.

We regret the necessity of asking you to take the time to have this work done, but we are sure that you will understand we do so in the interest of your safety and your satisfaction with the performance of your vehicle. We appreciate the confidence in our products that led you to buy a Ford vehicle and we want to do everything we can to retain that confidence.

Sincerely,
E. Williams"

*Motors Corp.*, 391 F.2d 495, 506 (8th Cir. 1968), wherein it was stated: "It is apparent that the National Traffic [and Motor Vehicle] Safety Act [of 1966] is intended to be supplementary of and in addition to the common law of negligence and product liability."

Under the law of this Commonwealth, a manufacturer of a product, which the manufacturer knows or should know is dangerous by nature or is in a dangerous condition, owes a duty to exercise reasonable care to prevent injury to those persons who it is foreseeable will come in contact with, and consequently be endangered by, that product. *Carter* v. *Yardley & Co.*, 319 Mass. 92, 96 (1946). Moreover, "[t]he duty to exercise reasonable care includes a duty to warn of danger, if 'the person on whom that duty rests has some reason to suppose a warning is needed.' *Carney* v. *Bereault*, 348 Mass. 502, 506 [1965]." *Haley* v. *Allied Chem. Corp.*, 353 Mass. 325, 330 (1967). *Mealey* v. *Super Curline Hair Wave Corp.*, 342 Mass. 303, 305 (1961). See *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 785 n.9 (1975). On the evidence presented at trial, it was properly left to the jury to decide whether the steps taken by Ford to warn of the risks of danger posed by the defective truck were sufficient to satisfy the duty which Ford owed at common law.

Moreover, a jury issue was also presented as to whether a so called "Service Campaign H-35," a program instituted by Ford to recall and repair trucks suspected of containing defective rivets, and Ford's offer to provide repairs for Hood trucks pursuant thereto, fulfilled Ford's common law duty to exercise reasonable care to prevent injury to persons to whom a risk of harm was foreseeable. *Carter* v. *Yardley & Co.*, *supra.* There was evidence that representatives of Ford and Hood entered into negotiations relative to repair of the trucks, that Ford offered to provide repair kits, containing the parts necessary to repair the trucks, to Hood through its dealer Toby and to reimburse Hood for labor which Hood mechanics performed in remedying the defective condition of the trucks, and that Hood did not undertake to make such repairs. There was also evi-

dence that the repair kits made available to Hood were incomplete and did not contain parts sufficient to carry out the necessary repairs. On this evidence, the question whether Ford exercised reasonable care was again properly one for the jury to decide. The evidence was sufficient to warrant the jury in finding, as they did, that Ford was negligent. That Hood itself also may have been negligent (as may be implied from the jury's finding against Hood in its count for negligence against Ford) in no way relieves Ford of liability to Terranova for its negligence in the circumstances of this case.

2. *Allowance of directed verdict against Ford in third-party action.* Ford contends that the judge erred in allowing Hood's motion for a directed verdict in the third-party action in which Ford sought indemnification from Hood. Ford argues that "[t]here was sufficient evidence presented at trial from which a jury could reasonably have concluded that Ford and Hood contracted to have Hood accomplish the needed inspection and repair of its trucks, and impliedly hold Ford harmless for its negligence with respect to the defect . . . ." We disagree. We hold that the evidence was not sufficient to warrant the jury in finding that a contract was entered into between Ford and any representative of Hood with authority to bind Hood in this manner.

We summarize the evidence on the issue of authority. Beginning in April, 1968, representatives from Hood, Ford and Toby commenced a series of discussions as to who would undertake to inspect and repair, where necessary, the trucks owned by Hood which were potentially defective. A conference was held at which John A. Sullivan, a Ford "fleet service representative," Frank Robbins, an employee of Toby, Jensen V. Penney, a Hood employee "in charge of all the maintenance and repairs of all Hood vehicles," John B. Collins, a Hood vehicle supervisor, and one Phillips, described by Collins in his testimony at trial as "head of the board of directors or the senior board of executives [at Hood]," were present. At that conference, according to the testimony of Collins, Sullivan outlined

the potential problem with the trucks and suggested that Hood itself inspect them, perform the necessary repairs, "and be reimbursed somehow from Ford Motor, some agreement with the Company later on." Both Sullivan and Penney testified that after Penney met with Collins and other vehicle supervisors later that same day to discuss Sullivan's suggestion, Penney told Sullivan that Hood had elected not to make the repairs itself due to shortage of personnel and other problems, and that the repairs would have to be made by Ford or a Ford dealer. Sullivan then suggested that arrangements be made between Hood and Toby to effect the necessary repairs. Collins acknowledged at trial testimony previously given by him at a deposition to the effect that at the meeting of Penney and the vehicle supervisors, Collins "believed[d] it was decided that we would make the corrections in our own garages," and that this decision was communicated to Sullivan. This in essence is the evidence presented at trial which bears on the issue of authority.

Assuming, arguendo, that Ford's theory of implied contractual indemnification states a valid cause of action, an issue expressly left unanswered by this court in *Stewart* v. *Roy Bros.*, 358 Mass. 446, 458 (1970), in order to prevail on such a cause of action Ford obviously must prove the existence of a valid and binding contract entered into between Ford and an agent of Hood with authority to act in its behalf. This Ford attempted to do with the only evidence favorable to it in this regard, viz., the testimony of Collins to the effect that Penney informed Sullivan of Hood's willingness to inspect and repair the trucks which it owned. However, there was no indication on the evidence most favorable to Ford that Penney had been expressly authorized by Hood either to agree in its behalf that Hood would repair the trucks, or to enter into any agreement by which Hood would indemnify Ford for Ford's negligence with respect to the defective condition of the trucks. Nor do we think that on the evidence any inference of implied authority is warranted. It is to be noted that while it appears from the testimony of Collins that Phillips, a high

level official of Hood, was present at a preliminary meeting during which Sullivan suggested that Hood undertake to inspect and repair its own vehicles, there is no evidence that Phillips participated in the later meeting of Penney and the Hood vehicle supervisors at which, as Collins testified, the decision was made that Hood adopt Sullivan's suggestion, or that Phillips in any way participated in, or approved of, that decision.

Ford having the burden of proof on the question of authority and failing to introduce evidence sufficient to present a jury issue, the motion for a directed verdict was rightly allowed. *Vim Truck Co.* v. *Vim Motor Truck Co.*, 238 Mass. 68, 72 (1921). See *Henriques* v. *Franklin Motor Car Co.*, 260 Mass. 518 (1927). See also G. Mottla, Proof of Cases in Massachusetts § 646 (2d ed. 1966).[5]

3. The exceptions of Ford are overruled. Judgments are to be entered in accordance with the verdicts of the jury.

*So ordered.*

---

[5] Because Ford amended the declaration on its third-party claim against Hood from one in tort for negligence to one in contract for implied indemnification, our discussion and decision are limited to the amended claim. However, it may be appropriate to note that (a) for the reasons stated in our decision in *Ford* v. *Flaherty,* 364 Mass. 382, 385-386 (1973), it is unlikely that Ford could have prevailed on its original claim in tort for negligence by Hood in view of its own negligence; and (b) Ford is not claiming a right to recover under our statute entitled "Contribution Among Joint Tortfeasors," G. L. c. 231B, enacted by St. 1962, c. 730, § 1.