JOCELYN WUJCIK WOLFE & others vs. FORD MOTOR
COMPANY & another.

Suffolk.    April 13, 1977. — May 17, 1978.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Negligence*, Manufacturer of motor vehicle, Duty to warn. *Pleading,
Civil,* Amendment. *Sale,* Warranty, Motor vehicle. *Words,* "Fami-
ly."

In an action against the manufacturer of a truck and the retailer who
sold the truck and a camper unit to recover damages for injuries
sustained in an accident resulting when a tire of the truck blew out,
the evidence presented a jury question whether the manufacturer
had been negligent in failing to provide a warning adequate to alert
the user of the truck to potential safety hazards of overloading the
truck or underinflating the tires [349–352]; the burden was on the
manufacturer to produce evidence to rebut the inference that the
plaintiff would have heeded an adequate warning [352–353].

In an action for negligence against the manufacturer of a truck, the
judge properly allowed at the commencement of trial a motion to
amend the complaint to include a claim that the defendant had not
provided adequate warning of the safety hazards of overloading the
truck or underinflating the tires. [353–354]

A plaintiff's motion to amend the pleadings to conform to the evidence
was properly allowed, where the defendant did not object to the
cross-examination of its expert witness on the unpleaded issue and
the evidence which was elicited and where, in view of the informa-
tion that the defendant had already furnished the plaintiffs, evi-
dence on the unpleaded issue could not have come as a surprise.
[354–355]

A buyer's niece, although not a member of the buyer's household, was
a "person who is in the family" of the buyer and thus could recover
for breach of a retailer's warranty of merchantability provided by
G. L. c. 106, § 2–314. [356–357]

A retailer's sale of a truck and camper unit without adequate warning
of the danger from a tire blowing out when used "for the ordinary
purposes for which such goods are used" was a breach of the implied

warranty of merchantability provided by G. L. c. 106, § 2–314. [357–359]

CONTRACT AND TORT. Writ in the Superior Court dated February 8, 1972.

The action was tried before *Leen, J.*

*Charles F. Barrett (Daniel C. Sacco* with him) for Ford Motor Company.

*Arthur J. McLaughlin* for Harold R. Donahue.

*Joseph M. Cohen (Leonard R. Sweet* with him) for the plaintiffs.

GOODMAN, J. This case arises out of an accident which took place on the Trans Canada Highway[1] on April 18, 1970. The plaintiffs, Alexis McLaughlin, her daughter Mary Ann McLaughlin, and her niece Jocelyn Wujcik Wolfe, were travelling in a Ford truck on which a camper was mounted. Also present in the vehicle were Margaret Wujcik, sister of Alexis McLaughlin, and Catherine McDonald.[2] While they were travelling at about forty-five miles per hour, there was a blowout in the left rear tire; the truck went out of control and rolled over, and the camper became completely detached from the body of the truck. Wolfe, who was riding in the camper at the time, was seriously injured; the other plaintiffs sustained lesser injuries. The defendants in the case are Ford Motor Company (Ford), manufacturer of the truck, and Harold R. Donahue (doing business as Donahue Mobile Homes), the dealer who assembled the truck and camper unit and sold it to James McLaughlin, the husband of Alexis McLaughlin.

The original declaration, filed April 3, 1972, alleged injuries "by reason of the negligence of the defendant [Ford] . . . in the manufacture of said motor vehicle and/

---

[1] We accept the assumption of the parties that the law of Massachusetts applies. No conflict of laws question has been raised.

[2] Counts in the declaration on behalf of Margaret Wujcik and Catherine McDonald were dismissed by stipulation at the beginning of the trial.

or the equipment and/or apparatus connected therewith . . . ."[3] The declaration also alleged in separate counts a breach of warranty by Donahue.

On June 2, 1975, at the beginning of the trial, the plaintiffs moved to amend their complaint (see Mass.R.Civ.P. 1A [3], 365 Mass. 731 [1974]) to allege in the counts against Ford injuries "by reason of the negligence of the defendant . . . in the manufacture of said motor vehicle and/or the equipment and/or apparatus connected therewith *and/or in its instructions or in its failure to give instructions as to said vehicle related to gross vehicle weight and gross vehicle weight requirements.*" (The amendment added the italicized portions.) The amendment was allowed over Ford's objection.[4]

The case was submitted to the jury with interrogatories (Mass. R.Civ.P. 49[b], 365 Mass. 813 [1974]); motions by the defendants for directed verdicts were denied. The jury found that (a) there was no defect in the left rear wheel, (b) the accident was caused by "a combination of the overloading in excess of the gross vehicle weight and the underinflation of the left rear tire of the vehicle,"[5] (c) Ford had not taken reasonable measures to make known "the risks and dangers with respect to what could occur as a

[3] On May 31, 1972, the plaintiffs specified the cause of their injuries as: "There was a tire rim failure while the camper trailer was travelling on the highway." They had also been ordered to specify how the wheel was defective and answered: "Bent tire rim, inability of wheel to withstand riding strain. I intend also to rely on such evidence of negligence as shall appear in evidence during the course of trial."

[4] At the end of the trial the judge allowed, again over Ford's objection, a further motion to amend the complaint which struck the portion italicized above and substituted instead "and/or in its failure to give adequately information to potential users of the vehicle and camper or to take reasonable measures to make known to such users the risks and dangers with respect to what could occur as a result of underinflation of tires or the imposition of weight in excess of the gross maximum weight of the vehicle."

[5] The jury found specially that the cause of the accident was not either overloading or underinflation separately.

result of underinflation of tires or the imposition of weight in excess of the gross maximum weight of the vehicle," (d) this failure was the proximate cause of the accident, (e) the plaintiffs were not contributorily negligent, and (f) Donahue had breached his warranty in the sale of the truck and camper unit. Verdicts were returned for all the plaintiffs against both defendants, who appealed from the resulting judgments.

FORD'S APPEAL

It is now accepted by both Ford and the plaintiffs that the jury could have found, as they did, that the blowout was caused by a combination of overloading the vehicle and underinflation of the left rear tire. Rather, Ford disputes the jury's finding that it was negligent in failing to provide an adequate warning of the danger that might arise from these conditions. It argues that, as a matter of law, adequate warnings were provided by the operator's manual furnished with the vehicle and the "rating plate" affixed to the door of the vehicle which gave (as described in the manual) the "recommended maximum gross vehicle weight rating." We disagree.

The duty of the manufacturer to warn of the dangers in the use of his product is well established; it is applicable to hazards involved in the use of properly designed products by users to whom the danger would not be apparent. *Farley* v. *Edward E. Tower Co.*, 271 Mass. 230, 233–234, 237 (1930). *Mealey* v. *Super Curline Hair Wave Corp.*, 342 Mass. 303, 305 (1961). *H.P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. 69, 75 (1976). *Schaeffer* v. *General Motors Corp.*, 372 Mass. 171, 173–174 (1977). *Fegan* v. *Lynn Ladder Co.*, 3 Mass. App. Ct. 60, 62–64 (1975). See *Bulpett* v. *Dodge Associates, Inc.*, 5 Mass. App. Ct. 593, 598–599 (1977). Swartz & Swartz, Products Liability in Massachusetts, 60 Mass. L.Q. 169, 174–177 (1975). Prosser, Torts § 96, at 646–647 (4th ed. 1971). Restatement

(Second) of Torts § 388 (1965). 1 Frumer & Friedman, Products Liability § 8.01 (1978). "If the manufacturer owes a duty to use due care in making his products, he owes also the companion duty to warn of the latent limitations of even a perfectly made article, the use of which, however, is dangerous if the user is ignorant of those limitations and the manufacturer has no reason to believe that he will recognize the danger." *Tomao* v. *A.P. DeSanno & Son*, 209 F.2d 544, 546 (3d Cir. 1954) (a diversity case applying Massachusetts law and discussing *Carter* v. *Yardley & Co.*, 319 Mass. 92 [1946]). The duty to warn of dangers is not necessarily discharged by mere directions for use. *Seibel* v. *Symons Corp.*, 221 N.W.2d 50, 57 (N.D. 1974). *Hiigel* v. *General Motors Corp.*, 190 Colo. 57, 64 (1976). *Bituminous Cas. Corp.* v. *Black & Decker Mfg. Co.*, 518 S.W.2d 868, 873 (Tex. Civ. App. 1974). *Williams* v. *Brown Mfg. Co.*, 93 Ill. App. 2d 334, 361–362 (1968), rev'd on other grounds, 45 Ill. 2d 418 (1970). Swartz & Swartz, Products Liability in Massachusetts, 60 Mass. L.Q. at 176. 1 Frumer & Friedman, Products Liability § 8.05(1) (1978). Dillard & Hart, Products Liability: Directions for Use and the Duty to Warn, 41 Va. L. Rev. 145, 147 (1955). Further, the forcefulness of the warning must be commensurate with the danger involved. *Post* v. *American Cleaning Equip. Corp.*, 437 S.W.2d 516, 520–521 (Ky. App. 1969). *Bituminous Cas. Corp.* v. *Black & Decker Mfg. Co.*, 518 S.W.2d at 873. 1 Frumer & Friedman, Products Liability § 8.05[3] (1978).

A jury question was presented whether the manual and the rating plate were sufficient to bring home the danger of a serious accident, which might result from a blowout, to the ordinary buyer of the truck who might use it with a camper. *Mealey* v. *Super Curline Hair Wave Corp.*, 342 Mass. at 305. *H.P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. at 75–76. The jury's finding that there was no adequate warning was well warranted. The recommended gross vehicle weight was opaque even as a direction with respect to the load which the truck could carry without

overloading; nowhere was the weight of the vehicle given so that the user could subtract that figure from the maximum gross vehicle weight rating of seven thousand five hundred pounds (subtracting also in this case the weight of added optional equipment) to derive the weight which could safely be loaded on the truck. Moreover, there is an obvious likelihood of overloading a camper with equipment and passengers by users who have had little or no experience in handling trucks, and this may require a more pointed warning that might otherwise be necessary. Nor was overloading presented as a danger to the safety of the passengers in the manual or elsewhere. Similarly, the "Recommended Inflation Pressures" given in the manual were not presented as safety measures, the disregard of which, when coupled with overloading, could result in a serious accident.[6]

Upon examination of the references in the manual to which Ford points, the jury could well have found that these references to the "Recommended tire pressures" and "Tire Pressures" — like, e.g., the accompanying references to "Maintenance recommendations" and "Cooling Systems," respectively — were designed to give information as to the most efficient use rather than alert the user to potential hazards. We find unpersuasive the emphasis placed by Ford on the statement under the heading "Tires and Tire Care": "For reliable vehicle control always maintain the recommended difference between front and rear tires." The jury could well have found that this suggestion, if relevant at all, was too oblique a reference and that a more explicit warning was required.[7]

_____

[6] Ford's expert pointed out that the underinflation and overloading complemented each other to create a distortion in the tire ("overdeflection") which resulted in the failure of the rim.

[7] We also note that the suggestion, "Before driving each day, glance at all your tires. If one looks softer than the others, have all pressures checked" might well have been considered by the jury to be misleading in view of the testimony by Ford's expert that the substantial underinflation in this case would not have been detected except by an expert. Compare Schaeffer v. General Motors Corp., 372 Mass. at 174.

Also, the jury might well have taken into consideration that this truck was built as a "camper special" (so designated in the manual) to be used by consumers having no experience with trucks.

Ford's contention, phrased in terms of proximate cause, that the plaintiffs did not introduce any evidence that an adequate warning would have reached them, is unpersuasive. An adequate warning is by definition one that would in the ordinary course have come to the user's attention. The failure to give such a warning therefore permits the inference that it would have alerted the user to the danger and forestalled the accident. The jury were free to draw such an inference absent some negating evidence binding on the plaintiffs. The burden was on the defendants to come forward with evidence tending to rebut such an inference; the plaintiffs were not required to refute a hypothesis which was never raised. "The very reason that the law imposes a duty to give notice in a particular case is the assumption that, because of the danger not commonly known to users, 'a warning is needed.'. . . That the plaintiff fell outside the common class should be the defendant's burden, not the plaintiff's." *Hubbard-Hall Chem. Co.* v. *Silverman*, 340 F.2d 402, 406 (1st Cir. 1965) (Aldrich, C.J., concurring). *Technical Chem. Co.* v. *Jacobs*, 480 S.W.2d 602, 604–606 (Tex. 1972), quoting Restatement (Second) of Torts § 402A, Comment j: "Where warning is given the seller may reasonably assume it will be read and heeded." The Texas Court suggests on the basis of this comment the adoption of a "presumption that . . . [the plaintiffs] would have read an adequate warning" which "may, however, be rebutted if the manufacturer comes forward with contrary evidence that the presumed fact did not exist." See *Reyes* v. *Wyeth Labs.*, 498 F.2d 1264, 1281–1282 (5th Cir.), cert. denied 419 U.S. 1096 (1974); *Nissen Trampoline Co.* v. *Terre Haute First Natl. Bank*, 332 N.E.2d 820, 826–827 (Ind. App. 1975), rev'd on other grounds, 265 Ind. 457 (1976); *Menard* v. *Newhall*, 135 Vt. 53 (1977) — all recognizing

the "presumption" suggested in the *Technical Chem. Co.* case. See also *Spruill* v. *Boyle-Midway, Inc.*, 308 F.2d 79, 87 (4th Cir. 1962); *Post* v. *American Cleaning Equip. Corp.*, 437 S.W.2d. at 521-522. Cf. *Cobb Heating & Air Conditioning Co.* v. *Hertron Chem. Co.*, 139 Ga. App. 803, 804-805 (1976).[8]

We also reject Ford's attack on the action of the judge in permitting the complaint to be amended to include a claim of inadequate warning. Allowance of the amendment at the beginning of trial on June 2, 1975 (see Mass.R.Civ.P. 15[a], 365 Mass. 761 [1974]), was well within the judge's discretion and consistent with the requirement of rule 15(a) that leave to amend should be given freely. *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 289–290 (1977).[9] Ford complains that the allowance of the amendment at the commencement of trial deprived it of sufficient time to prepare its defense to the new claim.[10] However, there is nothing to indicate just

---

[8] We see nothing of any consequence in the isolated bit of testimony by Mrs. McLaughlin that whenever she went on a trip she had the camper checked at a garage. At most it admits of speculation that the serviceman was negligent, but that would not absolve the manufacturer. *H.P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. at 76.

[9] The restrictive effect of specifications furnished by the plaintiffs prior to the new rules does not abridge the judge's discretion under rule 15. See Transitional Rule 1A[2], 365 Mass. 731 (1974). In any event, even under the old rules there was discretion to permit an amendment of specifications. *Shea* v. *Crompton & Knowles Loom Works*, 305 Mass. 327, 328 (1940).

[10] The injection of this claim appears to have been prompted by information furnished to the plaintiffs' counsel by Ford shortly before trial, that its experts would testify that the rim of the wheel failed by reason of "either an overload condition and/or underinflation condition with respect to the tires or a combination of both" and by an examination of the operating manual also furnished to the plaintiffs by Ford shortly before trial. The summary of expert testimony was given to the plaintiffs on April 11, 1975, pursuant to an order of the court dated January 14, 1975, that it be furnished in thirty days. Thereupon on April 17, 1975, the plaintiffs moved for the production

what, if any, presentation was made to the trial judge indicating such prejudice to Ford or such other circumstances as would justify the denial of the motion; nor is there any indication that Ford asked for a continuance. See *United States for Use of Way Panama, S.A.* v. *Ulhorn Int'l. S.A.*, 238 F. Supp. 887, 891 (D.C. C.Z. 1965), aff'd on other grounds sub nom. *National Surety Corp.* v. *United States for Use of Way Panama, S.A.*, 378 F.2d 294 (5th Cir.), cert. denied, 389 U.S. 1004 (1967). "[A] motion to amend should be allowed unless some good reason appears for denying it." *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. at 289. *Hanson* v. *Hunt Oil Co.*, 398 F.2d 578, 581–582 (8th Cir. 1968). See generally 6 Wright & Miller, Federal Practice and Procedure § 1488 (1971) (hereinafter Wright & Miller).

Nor do we see any error in the allowance of the plaintiffs' motion to conform the pleadings to the evidence (Mass.R.Civ.P. 15[b], 365 Mass. 761 [1974]), which made explicit that the plaintiffs' claim went to the failure adequately to warn of the dangers of both underinflation of tires and overloading. Ford argues that the plaintiffs' "intention only became evident during the plaintiffs' cross-examination of the defense experts, when it was obviously too late for Ford to prepare its legal contentions, much less conduct the discovery necessary for an adequate defense." But even on that assumption Ford cannot prevail because it did not object to the cross-examination on this issue and the evidence which was elicited. "Rule 15(b) of the Federal Rules of Civil Procedure [which is tracked by Mass. R.Civ.P. 15 (b)] provides that 'When issues not raised by the pleadings are tried by

of the operator's manual and other documents. The motion was allowed on May 1, 1975. According to the defendant's brief, the documents were given to the plaintiffs on May 7. The court further ordered, on April 11, 1975, production of additional documents and photographs supporting the opinion of one of Ford's experts; these were provided on May 15, 1975. Contrast the evidence of delay by the moving party in *Castellucci*, 372 Mass. at 292–293.

express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.' Under this rule, there is implied consent to litigate an issue if there is no objection to the introduction of evidence on the unpleaded issue, as long as the non-objecting party was fairly appraised that the evidence went to the unpleaded issue."[11] *Niedland* v. *United States*, 338 F.2d 254, 258 (3d Cir. 1964). *George Cohen Sons & Co.* v. *Koch,* 376 F.2d 629, 632–633 (1st Cir. 1967). 6 Wright & Miller § 1493, at 462-465. In this posture of the case the trial judge was well justified in instructing the jury on this issue (cf. *Slavitt* v. *Kauhi,* 384 F.2d 530, 534 [9th Cir. 1967]), and their verdict was, as we have seen, supported by the evidence. Consequently the motion to conform was a purely formal matter. "[F]ailure so to amend does not affect the result of the trial of these issues." Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974). See Reporters' Notes to rule 15(b), as appearing in Mass. Ann. Laws, Rules of Civil and Appellate Procedure, at 287 (1974); 6 Wright & Miller § 1493, at 460–461.

### DONAHUE'S APPEAL

Donahue makes only two contentions which we need consider (*Lolos* v. *Berlin,* 338 Mass. 10, 13–14 [1958]) : (1) that Wolfe is not within the class of persons (see G. L. c. 106, § 2–318, inserted by St. 1957, c. 765, § 1)[12] who may

---

[11] Ford does not claim that it thought that this cross-examination was directed to an issue already in the case. Indeed, the plaintiffs' cross-examination could have come as no surprise in view of the information Ford had furnished the plaintiffs and the complementary effect of overloading and underinflation to which Ford's experts testified.

[12] That statute read at all times material: "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the

recover for breach of the warranty of merchantability provided by G. L. c. 106, § 2–314[13] (also inserted by St. 1957, c. 765, § 1), and (2) that the warranty of merchantability has no application where the injury is caused by a failure to give an adequate warning.

1. We hold that Wolfe, the buyer's niece, is a "person who is in the family . . . of his [Donahue's] buyer." G. L. c. 106, § 2-318. The interpretation of § 2-318 in this respect has not come before the Supreme Judicial Court or this court. We are persuaded by the analysis in *Miller* v. *Preitz*, 422 Pa. 383 (1966), overruled on other grounds, *Kassab* v. *Soya*, 432 Pa. 217, 226 (1968), in which a nephew of the buyer who, like Wolfe, was not a member of the buyer's household was held to be "in the family" of the buyer under the identical Pennsylvania version of § 2-318 of the Uniform Commercial Code (Pa. Stat. Ann. tit. 12A, § 2-318 [Purdon], as appearing in 1959 Pa. Laws c. 426, at 1066). The court held that "considering the remedial nature of the provision and the natural connotations of the word, its meaning was not intended to be unduly restrictive . . . . This interpretation of the word 'family' is not too burdensome on the seller who makes the warranty because not only must the beneficiary be in the buyer's family but also it must be 'reasonable to expect that such person may use, consume or be affected by the goods.' "

---

warranty. A seller may not exclude or limit the operation of this section." The statute was amended by St. 1971, c. 670, § 1, to eliminate the requirement of privity as a defense "if the plaintiff was a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods." (See also St. 1973, c. 750, which amended this proviso by adding the word "lessor" after "seller.") The requirement of foreseeability has thus been a part of the statute at all times; and Donahue makes no argument that Wolfe was not a foreseeable traveller in the McLaughlins' camper.

[13] The court instructed the jury in accordance with this warranty rather than G. L. c. 106, § 2–315 (inserted by St. 1957, c. 765, § 1) which Donahue cites in his brief. No objection was taken to the instruction, and we treat § 2–314 as the applicable section.

422 Pa. at 390. The Pennsylvania court pointed out that the statute makes a distinction between "person ... in the family" and "person ... in the ... household," indicating that the former phrase was intended to extend beyond the members of the household. 422 Pa. at 389.

This construction is consistent with and finds support in *Dodge* v. *Boston & Providence R.R.*, 154 Mass. 299, 301 (1891), in which the court held that "[t]he word 'family' has several meanings. Its primary meaning is the collective body of persons who live in one house and under one head or management. Its secondary meaning is those who are of the same lineage, or descend from one common progenitor. Unless the context manifests a different intention, the word 'family' is usually construed in its primary sense." In this case the context does indicate otherwise; the statutory opposition of the terms "family" and "household" supports the broad construction of the term "family" to indicate those not ordinarily thought of as living in the buyer's household.

Further, the application of § 2-318 to such persons as Wolfe seems to us within the legislative intent to liberalize the "technical rules as to 'privity'" (Comment 2 to § 2-318 of the Uniform Commercial Code, as appearing in 1A U.L.A. [Master ed. 1976]) consistent with the "remedial nature" (422 Pa. at 390) of the statute.

2. In the hands of an ordinary user the truck and camper unit with nothing more than the inadequate warnings furnished by Ford created, as the jury found, the danger of a blowout when used "for the ordinary purposes for which such goods are used." G. L. c. 106, § 2-314 (2) (c). Donahue's sale was thus in breach of the warranty of merchantability, for a product is "unmerchantable if sold without a suitable warning." *Casagrande* v. *F.W. Woolworth Co.*, 340 Mass. 552, 555 (1960). The court said, in that case, "A retailer's implied warranty of merchantability of goods not of his manufacture is that they are reasonably suitable for the ordinary uses for which goods of that description are sold when used in accordance with

adequate warning and instructions." 340 Mass. at 555. Compare *Taylor* v. *Jacobson*, 336 Mass. 709, 716 (1958) (scope of retailer's implied warranty may be limited by "reasonable, intelligible and adequate warnings and instructions" supplied by a manufacturer).

Other courts have also held that inadequate warnings may be the basis for a claim of breach of implied warranty. In *Gardner* v. *Q.H.S. Inc.*, 448 F.2d 238 (4th Cir. 1971), the court held that an inadequate warning to users that hair rollers could catch fire could be the basis of an action for negligent failure to warn and breach of warranty: "while the separate theories of negligence and breach of warranty are not always coextensive, we think this same evidence [of inadequate warning] sufficient to constitute a jury issue as to whether the rollers were of merchantable quality." 448 F.2d at 243. Accord, *Jones* v. *Hittle Serv. Inc.*, 219 Kan. 627, 635, 640 (1976); *Hanson* v. *Murray*, 190 Cal. App. 2d 617, 623–624 (1961) (failure to warn of dangers involved in spraying of insecticides constituted actionable negligence and breach of warranty of fitness for a particular purpose); *Frey* v. *Montgomery Ward & Co.*, 258 N.W.2d 782, 789 (Minn. 1977) (concurring opinion). Compare *Barth* v. *B.F. Goodrich Tire Co.*, 265 Cal. App. 2d 228, 244–245 (1968), a case, similar to our case on its facts, in which the court upheld instructions that "[i]f directions or warnings as to the use of a particular product are reasonably required in order to prevent the use of such product from becoming unreasonably dangerous, the failure to give such warnings or directions, if any, renders the product defective . . . ." 265 Cal. App. 2d at 244. In the *Barth* case the court held that where a station wagon was overloaded while in normal use, creating a risk of tire failure, and where no warning was given of this danger, the defendant could be held liable under the doctrine of strict liability (Restatement [Second] of Torts § 402A [1965]), since, without an adequate warning, the tire was defective. Compare also Prosser, Torts § 99, at 659 (4th ed. 1971). See 2 Frumer & Friedman, Products

Liability, ch. 3, at 3-1 to 3-7 (1977), discussing strict liability in tort as a development from liability for breach of warranty. They make the point that the two bases for liability are identical apart from contract defenses of privity and the like.

*Judgments affirmed.*