STANLEY W. McLEOD & another[1] *vs.* WHITE MOTOR CORPORATION.

Middlesex. October 10, 1979. — February 6, 1980.

Present: GRANT, ARMSTRONG, & DREBEN, JJ.

*Practice, Civil,* Directed verdict, Judgment notwithstanding verdict. *Negligence,* Manufacturer, Tractor, Duty to warn. *Evidence,* Regulations.

In an action against the manufacturer of a diesel tractor for injuries resulting from the explosion of flammable naphtha being hauled by the tractor, the defendant's motions for a directed verdict and for judgment notwithstanding the verdict were properly denied where evidence warranted jury findings that the defendant was negligent either in failing to incorporate a shutoff device in the design of the tractor's

---

[1] Carol A. McLeod, who sought damages for loss of consortium.

air intake or in failing to warn users that such a device should be installed on tractors hauling flammables. [134-136]

At the trial of an action to recover for injuries sustained in an explosion of flammable naphtha, two sets of regulations of the Department of Public Safety, offered in evidence by the defendant, were properly excluded in the absence of evidence that either set was binding on the plaintiff at the time of the accident. [137]

TORT. Writ in the Superior Court dated July 27, 1972.

The case was tried before *Bennett, J.*

*Robert W. Cornell* for the defendant.

*Cynthia J. Cohen* (*Philander S. Ratzkoff & Leo V. Boyle* with her) for the plaintiffs.

*John F. Finnerty & John F. Finnerty, Jr.,* for the Shawsheen Rubber Company, Inc., submitted a brief.

DREBEN, J. The plaintiff Stanley McLeod (McLeod) was severely burned when flammable naphtha he was delivering in a trailer hauled by diesel tractor manufactured by the defendant White Motor Corporation (White) ignited. The jury returned verdicts for McLeod and his wife on negligence counts against White,[2] and judgments were entered for the plaintiffs. White appeals,[3] claiming (1) that its motions for a directed verdict and for judgment notwithstanding the verdict should have been granted on the ground that there was insufficient evidence of causation and negligence and (2) that the trial judge erred in excluding evidence of certain regulations of the Department of Public Safety bearing on the issue of McLeod's contributory negligence.

---

[2] A companion case, *Stanley W. McLeod vs. Shawsheen Rubber Co.,* was tried with the case against White, and judgment for the plaintiff Stanley W. McLeod was entered against Shawsheen Rubber Co. By stipulation the appeal of Shawsheen Rubber Co. was dismissed on October 25, 1978.

[3] The plaintiffs cross-appealed from the judgment directing a verdict for White on a count alleging strict liability. They have not pressed this claim in their brief (see *Swartz* v. *General Motors Corp.,* 375 Mass. 628, 629-631 [1978]), and it is waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

1. *Motions for directed verdict and for judgment notwithstanding the verdict.* The evidence, viewed in the light most favorable to the plaintiffs,[4] warrants a conclusion that the accident would not have occurred if White's tractor had been equipped with an emergency air shutoff device. On August 13, 1970, the date of the accident, while naphtha was being pumped out of the trailer during the course of a delivery, McLeod became aware of naphtha spraying over his body. He immediately attempted to shut off the tractor engine by turning the ignition key, but the engine continued to race. The continued racing of the engine was explained by a phenomenon known as the "dieseling effect," which permits a diesel engine to operate not only on its own fuel supply but also on any combustible mixture which is drawn into the cylinders through the air intake system. The naphtha in the trailer had the same combustion capability as the diesel fuel, and the air laden with naphtha vapor continued to fuel the engine. The ignition of the naphtha in the atmosphere surrounding the trailer occurred either through a spark or because of the heat of the engine. The plaintiffs' expert testified that the White tractor was not designed for the hauling of flammable liquids in accordance with sound engineering principles because the shutdown system cut off only the diesel fuel and not the intake of air. In his opinion, if an air shutoff device had been installed, the accident would not have occurred. The plaintiffs introduced evidence that some White tractors' sold in 1966 had engines containing this safety feature and that, at the time the tractor was sold in 1966, White had the engineering know-how to design such a device. It was also shown that the cost of such a device in 1968 was $107.50.

Although the original purchaser of the tractor did not specify an air shutoff device in his purchase order (it was not shown that that purchaser intended to use the tractor for

---

[4] This is the standard applicable in determining whether the motions should have been allowed. See *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 882 (1978).

hauling flammables), there was evidence the White tractors are often used to haul trailers containing flammable liquids and that it was foreseeable that a tractor originally sold to haul one commodity could, during its life span of four to ten years, come into the hands of a company hauling flammable liquids. Neither the tractor nor the owner's manual contained a warning relating to the need for an air shutoff device in the event that the tractor should be used to haul flammables, and the White manual for tractors which had the device was the same as the White manual for tractors which did not have the device.

The foregoing evidence was sufficient to take the case to the jury both on theories of negligent design and negligent failure to warn. Since it was foreseeable[5] that the White tractor in its normal life might well be used to haul flammables, it was open to the jury to find White negligent in not designing or warning against the risks of such use. "[A] manufacturer must anticpate the environment in which its product will be used, and it must design against the reasonably foreseeable risks attending the product's use in that setting." *Back* v. *Wickes Corp.*, 375 Mass. 633, 640-641 (1978).

---

[5]White argues that the judge correctly charged the jury that they would have to find that White knew or should have known that the tractor would *probably* be used to haul flammables, but that there was no evidence to support such an inference.

The word "probably" is open to a number of interpretations. The plaintiffs were not required to prove that a majority of tractors would be used to haul flammables to show that the defendant ought to have known and guarded against the danger of injury. See *Carter* v. *Yardley & Co.*, 319 Mass. 92, 94 (1946). If an incorrect burden was placed on the plaintiffs, this does not help White, as its claim that a directed verdict should have been granted is to be determined by the correct rule of law. Moreover, White has not urged on appeal that there are additional grounds, not applicable to the denial of its motion for a directed verdict, which pertain to the denial of its motion for judgment notwithstanding the verdict. In any event, the judge correctly charged that the manufacturer's duty was to make its product safe "for the use of persons who may reasonably be expected to use the property and the product," and his use of the term "probably" in the context of the charge as a whole was in the sense of "foreseeably." For a similar use, see Restatement (Second) of Torts § 395 (1965).

Although *Wickes* involved liability for breach of warranty, the language cited is also applicable in determining liability for negligent design. *Smith* v. *Ariens Co.*, 375 Mass. 620, 624 (1978). *Micallef.* v. *Miehle Co.*, 39 N.Y.2d 376, 385-386 (1976).

The plaintiff presented evidence of a feasible device which would have reduced the risk without undue cost or interference with the performance of the machinery (*Uloth* v. *City Tank Corp.*, 376 Mass. 874, 881 [1978]) and which on the evidence most favorable to the plaintiff would have prevented the accident. It was open to the jury to find negligence even though in 1966 there was no widespread practice of using these devices on highway tractors. See *Corthell* v. *Great Atl. & Pac. Tea Co.*, 291 Mass. 242, 243-244 (1935).

It was also a jury question whether, on the evidence, White was negligent in not warning its tractor users or purchasers that air shutoff devices should be installed on the engines of tractors hauling flammables.[6] *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 782-783 (1975). *Tomao* v. *A.P. De Sanno & Son*, 209 F.2d 544, 546 (3d Cir. 1954) (applying Massachusetts law). Restatement (Second) of Torts § 395, Comment k (1965). See *Wolfe* v. *Ford Motor Co.*, 6 Mass. App. Ct. 346, 349-350 (1978).

For these reasons, the motions for a directed verdict and for judgment notwithstanding the verdict were properly denied on the plaintiffs' negligence counts.

---

[6] In oral argument counsel for White argued that since McLeod's employer substantially modified the tractor by rearranging the exhaust system and by installing a power takeoff and pump on the tractor, White should be relieved of liability. However, White made no objection to the judge's instructions, which did not discuss intervening negligence but charged only that a manufacturer is not liable for unforeseen situations. White's lawyer at the close of the charge stated that he thought the judge's charge on causation "pretty much covered it" ("it" being intervening negligence). We also note that in White's brief the only reference to the employer's modification is in connection with the plaintiffs' cross appeal on strict liability. White cannot in oral argument raise for the first time the claim that such modifications relieved it of liability. On the merits see and compare *Finnegan* v. *Havir Mfg. Corp.*, 60 N.J. 413, 422-423 (1972).

2. *Admissibility of the regulations.* At the close of the trial White offered two sets of regulations of the Massachusetts Department of Public Safety, one dated May 4, 1961, and the other April, 1970. The regulations were offered to show that McLeod did not comply with paragraph 8(c) of the regulations and that this violation was the cause of the accident. Paragaph 8(c) is identical in both the 1961 and 1970 regulations, and its last sentence reads as follows: "This regulation shall not be mandatory for bulk delivery to existing equipment for eighteen months after the effective date of these regulations."[7] If the last sentence is applicable, the 1970 regulation was not in effect on August 13, 1970, the date of the accident. White argues that there was no change in paragraph 8(c) of the regulations between 1961 and 1970 and that the last sentence was, therefore, inapplicable. However, there was no affirmative evidence that paragraph 8(c) did, in fact, continue in force without modification from 1961 through 1970. Moreover, there might have been a conscious administrative intent in 1970 to create a new grace period. On this record, the judge was not required to assume that the grace period contained in the 1970 regulation was not a deliberate administrative decision or that the regulations remained unchanged. Cf. *Lioni* v. *Marr,* 320 Mass. 17, 20-21 (1946). There was no error in the exclusion of the regulations.

*Judgment affirmed.*

---

[7] The first part of paragraph 8(c) reads as follows: "Draw-off valves on tank vehicles shall be self-closing, and when opened for the purpose of discharging liquid, such valves shall be held open manually except where a tight hose connection is made to the inlet of the receiving container."